Arnold Leon HAMMETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 333–85.

Court of Criminal Appeals of Texas, En Banc.

July 2, 1986.

Richard Alley (court-appointed), Fort Worth, for appellant.

Tim Curry, Dist. Atty. & C. Chris Marshall & Mary Thornton Taylor, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted by a jury of the misdemeanor offense of driving while intoxicated, and his punishment assessed by the trial court at sixty days in jail, a $200.00 fine, and suspension of his operator's license for 180 days. His conviction was affirmed by the Fort Worth Court of Appeals in an unpublished opinion (Tex. App. No. 2-84-052-CR, delivered February 7, 1985). The court of appeals held, *inter alia*, that appellant had "opened the door" to admission of a prior conviction for criminal mischief. We granted appellant's petition for discretionary review to examine this holding.

Appellant was stopped on the Grapevine Highway in Tarrant County for speeding and weaving in his lane by Officer Craven of the North Richland Hills Police Department on the night of January 6, 1984. Craven testified that appellant "seemed to have some difficulty exiting his vehicle and walking toward me, a staggering type motion," and that he "had an odor of an alcoholic beverage about his person and breath." Appellant proceeded to sit on the hood of the patrol car. When informed by Officer Craven that he was under arrest for driving while intoxicated appellant returned to his car, retrieved his keys from the ignition and attempted to unlock his trunk. Told again at this point that he was

under arrest, appellant replied, "You're not going to arrest me." When Craven pulled appellant's arm behind his back in order to handcuff him, an altercation ensued. Appellant was eventually subdued, but not before he was struck over the head with Craven's flashlight. Subsequently transported to a hospital, appellant refused treatment. Craven cited as the basis for his opinion that appellant had been intoxicated, "[t]he strong odor of alcoholic beverage about his breath and person, the staggering, the unusual reasoning for him sitting on the hood of the patrol car, even the fact of resisting."

Testifying in his own behalf, appellant maintained he had had only one half of a beer after work on the night of his arrest. When Craven stopped him he merely asked for appellant's driver's license, and after conducting a radio check, accused appellant of having "a switched tag" on his car. Appellant denied this, and Craven returned to his patrol car "to make another call." As Craven was returning to where appellant stood beside his own car, appellant reached into his car to retrieve his coat. Before he could turn around, Craven hit him with the butt of his pistol. The blow knocked him "rum-dum" and the next thing appellant remembered was Craven informing him he was under arrest. With this Craven twisted appellant's right arm behind his back. Jerking this arm away, appellant exclaimed, "That's my crippled arm. Don't twist my arm[,]" and offered his left arm instead to be cuffed. When Craven again attempted to twist the crippled right arm, the scuffle ensued. Appellant testified to a number of past injuries: "My hip bone has been busted, and my backbone about the beltline has been busted twice. The bone in the back of my neck has been busted. Then this arm has been busted up." He maintained that because of these injuries, "[i]f you would see me walk down the street and you didn't know me, you'd think I was drunk, just walking."

Appellant also asserted that when a backup officer arrived at the scene of the arrest, the officer told Craven, "after you done hit him, you're going to have to charge him with something, because you've got an assault against him."

Although a transcript of the final arguments to the jury is not included in the record before us, we may reasonably deduce from the evidence just summarized that appellant's defensive posture in the case was that his intoxication was apparent, rather than real, and that Craven was using his apparent intoxication to cover up for an otherwise unprovoked assault. Needless to say, the jury rejected this scenario.

During appellant's direct examination the following colloquy occurred:

"Q. Isn't it a fact that you have previously been arrested for Public Intoxication in January of '83 or thereabouts? Is that about the right time?

A. Yes, sir.

Q. Did you plead guilty?

A. Yes, sir.

Q. Is that the only time you have ever been arrested for public intoxication?

A. Yes, sir."

At this juncture appellant's counsel passed the witness and the prosecutor immediately asked to have the jury excused. Thereupon, the prosecutor sought the trial court's permission to introduce evidence of other prior arrests of the appellant on the ground that the above colloquy had created an impression with the jury that he had never been arrested for any offense other than public intoxication. The trial court had the court reporter read back the contested colloquy, and after some argument a recess was called so that the prosecutor could supply the court with caselaw "pretty much on point."

When the hearing reconvened the trial court, having "read the cases," invited further argument. The prosecutor reiterated his position. Appellant's counsel countered that his client had not indicated that he had never been arrested for *any* other offense, but only that he had been arrested only once for the single offense of public intoxication. Again the trial court had the court reporter read back the colloquy. Ultimate-

ly, after further argument,[1] the prosecutor was allowed to ask appellant on crossexamination whether he had pled guilty the previous year to a charge of criminal mischief. Appellant admitted he had.

The court of appeals ruled that the criminal mischief conviction was admissible under an exception to the general rule against admissibility of extraneous offenses in that it rebutted the false impression left with the jury that the one arrest for public intoxication was the full extent of appellant's arrest history.[2] Both the trial court and the court of appeals relied upon *Nelson v. State*, 503 S.W.2d 543 (Tex.Cr.App.1974). In his petition for discretionary review appellant again insists that the question and answer in the instant case did not create such a false impression, and that *Nelson* and cases of its ilk are inapplicable.

▪ As with any other witness, an accused puts his character for veracity (as opposed to his moral character) in issue by merely taking the stand, and thus he may be impeached in the same manner as any other witness. 1 Ray, Texas Practice: Law of Evidence, §§ 643, 649, pp. 571, 574 (3d ed. 1980). In *Nelson*, supra at 545, the Court opined:

"Generally, as stated in *Ochoa v. State*, 481 S.W.2d 847 (Tex.Cr.App.1972), upon which appellant relies, charges of offenses are inadmissible for impeachment purposes unless the charges resulted in final convictions for felony offenses or final convictions involving moral turpi-

tude, none of which are (sic) too remote; however, as distinguished in *Ochoa*, there is an exception. The exception arises when the witness, by his direct testimony, leaves a false impression of his 'trouble' with the police. In that situation, it is legitimate to prove that the witness had been 'in trouble' on occasions other than those about which he offered direct testimony."

See also *Reese v. State*, 531 S.W.2d 638, 640 (Tex.Cr.App.1976); *Ex parte Carter*, 621 S.W.2d 786, 788 (Tex.Cr.App.1981).

▪ In holding thusly the Court has essentially fashioned a rule that when an accused testifies gratuitously as to some matter that is irrelevant or collateral to the proceeding, as with any other witness he may be impeached by a showing that he has lied or is in error as to that matter.[3] See 2 C. Torcia, Wharton's Criminal Evidence, § 467, p. 408 (13th ed. 1972). Ordinarily the question of whether or not the accused has a criminal past or has otherwise been "in trouble" before is irrelevant to any material issue in the case, *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979), and hence, is collateral. Should the accused nevertheless falsely insinuate during his direct examination that he has never been "in trouble," the State may expose that falsehood just as it may any other falsely asserted collateral matter.[4] The inference that is permissible from such exposure is that if the accused lied or was in

---

**1.** The trial court seems to have focused on the fact that the question was raised by appellant's counsel on direct examination rather than by the State on crossexamination. See n. 4, *post.*

**2.** Apparently conceded by all is that criminal mischief is neither a felony nor an offense involving moral turpitude; thus appellant's conviction for that offense is not admissible impeachment evidence on that basis.

**3.** In *Hoffman v. State*, 514 S.W.2d 248 (Tex.Cr. App.1974) the Court observed:
"The record in the instant case reveals that the appellant opened the door *for impeachment* by denying ever having complaints made against him while a park ranger."
(All emphasis supplied by the writer of this opinion unless otherwise indicated.)

**4.** Of course the State may not bootstrap its way to such impeachment by eliciting for the first time on crossexamination the blanket statement that the accused has never before been "in trouble," and then contradicting it. Having broached the question, the State is bound by the answer it receives. *Shipman v. State*, 604 S.W.2d 182 (Tex.Cr.App.1980); *Ex parte Carter,* supra (Onion, P.J., dissenting). This is in keeping with the general rule that witnesses cannot be impeached upon collateral matters. See 1 Branch's Annotated Penal Code (2d ed. 1956), §§ 187, 200, pp. 199, 221. Should the witness or the party tendering him "open the door," however, by gratuitously raising the collateral matter, the opposing party may impeach the witness on the matter so raised.

error as to a collateral matter (especially one implicating his aptitude for getting in trouble with the law), he is likely to have lied or been in error in the balance of his testimony—those aspects of his testimony that *are* relevant to material issues in the case. This is a proper impeachment function.[5]

The issue in this cause is to what extent the colloquy in the instant cause "opened the door" to impeachment of appellant by a showing of his prior criminal history. Resolution of that question depends on how broadly one interprets the question that was asked, *viz.*, "Is that the only time you have ever been arrested for public intoxication?" The court of appeals, viewing appellant's testimony as a whole, concluded that "the tenor of his testimony on direct examination conveyed the impression that his entire criminal record consisted of one conviction for public intoxication." We are compelled to disagree.

■ The import of a question is frequently conveyed by its intonation. Were the record to reflect some kind of pause or rise in appellant's counsel's voice between the words "arrested" and "for"—a comma, dash or question mark would suffice—we would be inclined to agree with the court of appeals that the import of the question was clearly to convey to the jury the erroneous impression that appellant's arrest record was limited to the single incident of public intoxication. Absent such indication to the contrary,[6] however, it must be assumed for purposes of review of the record that the question was asked just as it appears, *viz.*, whether January of 1983 was the *only* time appellant has ever been arrested *for public intoxication*. If it believed that the record inadequately reflected the true tenor of the question, it was incumbent upon the State to object to the record so that a hearing could be held at which it could be determined (e.g., by judicial notice based on the trial court's memory of the event) whether some appropriate mark of punctuation should be added to memorialize the actual intonation of counsel's question. V.A.C. C.P., Art. 40.09 § 7. While this may seem an onerous burden to place on the State, it will be noted that admissibility of appellant's conviction for criminal mischief was the single most hotly contested evidentiary issue in the trial of this cause. It is not too much to require diligence on the part of the State to assure accuracy of the record on a point that would almost certainly be raised on appeal.

■ Moreover, from the context in which the question was asked, it appears to us that the narrower import of the question is the more likely. The major substantive issue in the case was whether appellant was truly intoxicated when he was stopped. Operating upon the probably erroneous assumption that the State would be allowed to elicit evidence of appellant's former arrest for an offense involving intoxication, counsel was obviously attempting to defuse the effect of that disclosure by broaching it himself, but in a presumably more favorable light; *viz.*, that it was his *only* prior arrest for an offense involving intoxication.

The State argues that regardless of the intended import of the question, the trial judge was in the best position to evaluate the probable effect of the question and

---

**5.** What is *not* permissible is the inference that because the accused is a troublemaker in general, he probably committed the offense with which he is presently charged. *Murphy v. State,* supra. Of course, in the event that some aspect of an accused's criminal history *is* relevant to a material issue in the case and its probative value outweighs its prejudicial effect, it would be admissible as substantive evidence on that issue —again, not for the inference that because the accused is of bad moral character generally, he must have committed the offense in question, but rather for its relevancy "to, e.g., establish an otherwise unprovable element of the offense, correct a potentially false impression left with the jury by defensive testimony or shore up some aspect of the State's case which has been genuinely undermined by crossexamination." *Morgan v. State,* 692 S.W.2d 877, 882 n. 7 (Tex. Cr.App.1985).

**6.** Both times the trial court had the colloquy read back to him it appears the same way in the record, without any indicator of pause or rise in inflection between "arrest" and "for."

answer on the jury; that having heard the original colloquy and had it read back to him twice, he obviously concluded that it had communicated a broader meaning than is apparent on its face.[7] The State's argument is premised upon the assumption that the question asked was at least ambiguous, and that it was this ambiguity which called for the trial judge to decide the effect of the colloquy on the jury. However, as noted *ante,* we find the question unambiguous as it appears in the record. Moreover, the circumstances under which it was asked suggest the import of the question that is apparent from the record is almost certainly what was conveyed to the jury. On this state of the record we are "not prepared to hold that whenever a defendant on direct examination mentions an arrest for an offense other than that for which he is on trial that regardless of the circumstances he must relate all other arrests on direct examination or face impeachment by the state with his arrest record[.]" *Ex parte Carter,* supra at 795 (Onion, P.J., dissenting).

Proving that appellant had pled guilty to a charge of criminal mischief in no way impugned the veracity of his statement that the *only* time he had ever been arrested *for public intoxication* was in January of 1983. Therefore such proof could have no legitimate function as impeachment evidence, and the trial court erred in admitting it.

Inasmuch as it held that no such error occurred, the judgment of the court of appeals is reversed.[8] The cause is remanded to that court for a determination of the harmfulness, *vel non,* of this error.

ONION, P.J., not participating.

W.C. DAVIS, J., dissents.

---

**7.** The State invites us to compare *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) for this proposition.

**8.** Through administrative error the parties were notified that discretionary review was granted on another of appellant's grounds for review

involving an assertedly improper question on the part of the prosecutor. In fact this Court did not grant review on that ground. In any event, in view of our present disposition, we need not pass on that issue here.