COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
DEREK McCLELLAN,                                   )                  No. 08-04-00061-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  243rd District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20010D05846)

O P I N I O N

            Derek McClellan was indicted on two counts of indecency with a child. Count I alleged that
he had touched the child’s genitals while Count II alleged he had touched her breast. A jury found
him not guilty on Count I and guilty on Count II. He was sentenced to eight years in the Institutional
Division of the Texas Department of Criminal Justice, probated to eight years’ community
supervision. Finding no error, we affirm.
FACTUAL SUMMARY
            The victim in this case is nine-year-old Andraya who suffers from a mild case of cerebral
palsy and is mentally retarded. Andraya is ambulatory but walks with a slight limp. She knows a
few sign language words but cannot communicate how she is feeling. While she does not talk, she
can hear and understand and her father is able to communicate with her. When Andraya is upset,
she cries. She also throw a toy or makes a sound to get her father’s attention. At the time of the
incident in question, Andraya attended Chavez Elementary School in the Socorro Independent
School District (SISD) and was transported to and from school by a special needs bus. 
            During the fall of 2001, Jaime Rodriguez was working as a mechanic and backup bus driver.
On September 10, he served as a backup driver for a special needs bus on which Appellant was the
bus monitor. The bus monitor instructs substitute drivers where to go. The first time Rodriguez
drove the bus, Appellant was paying attention and giving him directions until a little girl named
Andraya boarded. Andraya had problems moving her hands, walking, and talking. Appellant sat
in the second seat with the child and did not give Rodriguez directions. Through the mirror,
Rodriguez could see Appellant hugging Andraya with one hand and touching her breast with the
other. 
            The second time Rodriguez drove the bus, Appellant sat in the same place with Andraya. 
Rodriguez saw Appellant hugging Andraya and later saw Appellant’s fingertips under the child’s
blouse. Rodriguez also believed that Appellant touched Andraya’s private parts. Rodriguez
described the child as desperate to get his attention since she was making sounds, moaning and
making movements with her hands and head. When Rodriguez turned to talk to Appellant,
Appellant was surprised and was laughing. Rodriguez demonstrated to the jury Appellant’s touching
and the movements Andraya made to get his attention. Rodriguez reported the incident to Juan
Miranda. 
            During the State’s rebuttal, Rodriguez testified about a third incident. When he stopped the
bus, Appellant was crouched over Andraya and covering her with his body. Rodriguez was upset
and asked Appellant, “What are you doing, you dumb shit?” Appellant was surprised by the strong
language and there were no further incidents. Rodriguez again reported Appellant’s behavior to Juan
Miranda but Miranda told him not to get involved in women’s gossip. 
            On September 24, El Paso Police Detective Jose Guerra of the crimes against children unit
was dispatched in response to an allegation of indecency with a child. Guerra met with Rodriguez
and took his statement. Guerra met with two more witnesses the following day and took their
statements. When Guerra found that Appellant was no longer at his place of employment, he
obtained an arrest warrant. He then proceeded to Appellant’s home where he placed Appellant under
arrest and transferred him to the station. 
            After Mirandizing Appellant, Guerra interviewed him for approximately one hour and twenty
minutes. Appellant gave a statement and explained he had worked as a bus monitor for SISD for six
and a half years. One time when a substitute driver was on board, the bus picked up a little girl
named Andraya. Appellant would sometimes hug Andraya to keep her from hitting the windows or
causing problems as it was his job to keep Andraya from hurting herself and the other children. 
Andraya was not acting up that day, but he sat with her anyway. As he was hugging the child, he
accidently touched her breast. Appellant also admitted that he might have accidently put his hand
inside Andraya’s blouse. Guerra described Appellant as nervous, upset, and in denial about the
allegations against him. His demeanor changed during the course of the interview and he became
embarrassed. Appellant would not look the officer in the eye, looked down, and crossed his arms
in front of him. After Appellant gave his statement, he was transported to the magistrate and then
booked into the county jail.
            Oscar Anchondo, the past director of transportation for SISD, supervised all the bus drivers
and monitors, including Appellant. On November 28, 2000, he instructed Appellant not to sit with
any females on the bus, including Andraya. If a student caused a disturbance on a bus, then the
monitor was supposed to write up the incident on a school discipline form and report any behavior
problems to the school principal. In one report, Appellant told Anchondo that he had been sitting
with Andraya to prevent her from sliding or slouching over to the window and hitting herself when
she fell asleep. Anchondo had not received any previous reports of Andraya hitting her head. Hector
Silva, SISD’s current director of transportation, previously held the position of coordinator of
transportation. Silva had known Rodriguez for five or six years since he was a mechanic in his
department. In Silva’s opinion, Rodriguez had a bad reputation for truthfulness in the workplace. 
Rodriguez also reported Appellant’s inappropriate behavior to Silva. Silva impressed upon him that
this was a serious allegation but Silva denied threatening Rodriguez. However, Silva was aware that
at least one bus driver was calling Rodriguez a snitch.
            Armando Bustamante, the current superintendent of administration at SISD, testified that he
had numerous dealings with Rodriguez and believed him to be an untruthful person with a bad
reputation for truthfulness in the community. By “community,” Bustamante referred to
administrators within the department of transportation. At the time of the incident, Bustamante was
serving as director of personnel services and would coordinate with the director of transportation
services on personnel issues. If an employee were to molest a child on a school bus, Bustamante
would have an administrative role in the incident. After the allegations were made, Appellant was
suspended. Bustamante conducted an independent investigation. He reviewed a report from Child
Protective Services which concluded that Andraya had been inappropriately touched by a school bus
monitor. Unsatisfied with the report and the department’s actions, Bustamante concluded there had
been no wrongdoing. Appellant was reinstated in June 2002, and Bustamante did not believe he
posed any threat to the children. On rebuttal, Bustamante testified that Rodriguez had told him he
was afraid of being fired. In fact, Rodriguez received an official reprimand on August 28. 
Bustamante admitted that he was a party to a lawsuit and had himself been accused of wrongdoing. 
            Juana Acosta had been employed by SISD as a bus driver on Andraya’s route. Appellant was
the bus monitor on the route. Acosta described Andraya as a child who laughed a lot, had a smile
on her face, and liked to clap. When Acosta started the route, Appellant would sit with Andraya. 
After Acosta spoke to her boss, Appellant was prohibited from sitting with the child. Nevertheless,
when Acosta was not paying attention or was distracted, Appellant would still sit with her. Acosta 
watched Appellant through the mirror. Andraya’s brother also rode the bus and at one point sat next
to her. He was moved since he would sometimes hit her with his arm causing Andraya to hit back. 
After her brother was moved, there were no more problems with Andraya, and she never hit the other
students. But when Appellant would get near Andraya, Andraya would hit him. While sometimes
Andraya did not want others to touch her, she never fought with others like she did with Appellant. 
Acosta admitted that she might not have told police or the school that Andraya would hit Appellant
and she acknowledged that the child had on occasion hit her brother and teacher aides. 
            Several bus drivers testified for the defense. Robert Leyva also drove Andraya’s bus route. 
To him, Andraya seemed hyperactive and fidgety; she would take her shoes off and lick the window. 
During that time, Appellant was the bus monitor and he would sit with Andraya. Leyva did not
know that Appellant had been instructed not to do so. Jaime Diaz described Andraya as “hyper.” 
 Jacqueline Gutierrez explained that Andraya would take off her shoes, swing her arms and head, try
to unbutton her blouse, and tended to hit her head against the window. Maria Rodriguez
characterized Andraya as restless. The child seemed happy but someone needed to sit with her since
she would take off her shoes, hit herself on the window, and lick it. Manuel Caraveo testified that
Andraya would remove her shoes and spit. When Andraya would become violent, Caraveo would
tell Appellant to take care of her and hold her hands. On one occasion, Andraya broke Caraveo’s
glasses. 
            Several bus monitors testified as well. Veronica Munoz was familiar with Andraya since she
took over Appellant’s route after he was suspended. Andraya would take off her shoes and socks,
throw them, spit, and bang her head against the window. In Munoz’s opinion, Andraya needed
attention and supervision. She agreed that for a nonverbal child, kicking off her shoes would be a
reasonable thing to do to get someone’s attention. Rosa Maria Martinez monitored Andraya in 1998
and 1999. She characterized Andraya as a child who needed someone to be with her all the time
since she would unbuckle herself, take off her shoes, and pull hair. When left alone, the child would
stand up and cause disruptions. Martinez never reported this misbehavior to anyone. Leticia
Schwarz described two times she monitored Andraya. Andraya was very hyper, swinging her hands
a lot, and striking the window or her arm. Andraya also would take off her shoes or try to lift up her
blouse. Schwarz would sit with Andraya and hold her hands. Andraya had hit her but had not hit
other children. Schwarz notified Andraya’s father that Andraya was hitting her head against the
window but she never reported it to district officials and no safety device was installed to protect the
child. Schwarz was acquainted with Juana Acosta and knew she had a bad reputation for
truthfulness. 
            Frederick Doreck was Andraya’s special education teacher. He testified that Andraya had
problems with transitioning and that she would sometimes throw herself on the ground on the way
to the bus after school. Other problems included laughing, getting upset, and trying to strike out and
scratch. Doreck also described attention-getting behavior including tantrums and banging her head. 
Doreck had ridden on the bus with Andraya on field trips. He would sit with her but not because she
was acting up. If Andraya were hitting her head on the window, Doreck would sit in the seat in front
of her and put his hand up to avoid her hitting her head. Andraya also had problems with spitting
and impulsivity. He did remember Andraya kicking off her shoes, but this was a common problem
among his students. Doreck never received a complaint from Appellant regarding Andraya’s
behavior. He opined that when a child has been sexually abused, she might imitate behavior and
initiate provocative conduct. He believed Andraya was capable of imitative behavior. 
            Dr. Luis Natalicio discussed Andraya’s school records. In 1997, Andraya exhibited a number
of behavioral symptoms: (1) aggressive behavior towards others in her environment, (2) throwing
herself on the floor and falling, (3) aggressive behavior toward and mistreatment of other
children/students, (4) hitting and biting when left alone, (5) lack of body awareness, and (6)
impulsivity and lack of awareness of hazardous situations or elements. In 1998, Andraya still
required a lot of attention, needed help when descending steps, and needed supervision due to her
impulsivity and lack of awareness of hazardous conditions. In 1999, Andraya would throw herself
on the floor and had a hard time transitioning from task to task. She exhibited oppositional and
impulsive behavior. Andraya was ambulatory but fell frequently and while she did well on standard
stairs, she had a hard time navigating the bus steps. In 2000, close supervision was necessary since
Andraya would spit or hit when excited. She was still falling, but many of her behavior problems
were common for a mentally retarded child. 
SUFFICIENCY OF THE EVIDENCE
            In Points of Error One and Two, Appellant challenges the legal and factual sufficiency of the
evidence to support his conviction. Specifically, he argues that the State failed to prove he
intentionally and knowingly engaged in sexual contact with a child with the intent to arouse and
gratify his sexual desire.
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard gives
full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at
319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997). 
Indecency with a Child
            A person commits indecency with a child if he engages in sexual contact with a child who
is younger than seventeen years of age. Tex.Pen.Code Ann. § 21.11(a)(1)(Vernon 2003). Sexual
contact means any touching of the anus, breast, or any part of the genitals of another person with
intent to arouse or gratify the sexual desire of any person. Tex.Pen.Code Ann. § 21.01(2). The
requisite specific intent to arouse or gratify sexual desire of any person can be inferred from the
defendant’s conduct, his remarks and all surrounding circumstances. McKenzie v. State, 6l7 S.W.2d
2ll, 2l6 (Tex.Crim.App. 198l).
 

Inferences From the Testimony
            Although Appellant was instructed not to sit with Andraya on the bus, he continued to do so
even after being warned. Acosta testified that whenever she was not looking, Appellant would rush
to sit with Andraya. Rodriguez saw Appellant hugging Andraya with one hand and touching her
breast with the other. He also observed Appellant put his fingers inside Andraya’s blouse. When
Appellant realized that Rodriguez was watching, he was surprised and then smiled. Several defense
witnesses testified that both Rodriguez and Acosta had bad reputations for truthfulness.
            A CPS report substantiated the allegations against Appellant but an internal investigation
cleared him of any wrongdoing. Appellant claimed that he touched Andraya accidently but he
admitted that Andraya was not misbehaving. There were various defense witnesses who testified
that Andraya was hyper and required special attention while riding the bus but these behavioral
problems were never reported to the school.
            In examining the legal sufficiency of the evidence, it is the responsibility of the trier of fact 
to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic to ultimate facts. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not
resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the jury
to do so. See Adelman, 828 S.W.2d at 421; Matson, 819 S.W.2d at 843. The jury chose to believe
the testimony of Rodriguez and Acosta over the defense witnesses and had the responsibility of
inferring intent from Appellant’s conduct, remarks, and the surrounding circumstances. We
conclude that the jury could have found Appellant guilty of touching Andraya’s breast with the intent
to arouse or gratify his sexual desire beyond a reasonable doubt. 
            In examining the evidence in a neutral light, we must give due deference to the fact finder’s
determinations. Johnson, 23 S.W.3d at 8-9; Clewis, 922 S.W.2d at 136. The fact finder may believe
all, some, or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).
We do not find the evidence so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand or that the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. We overrule Points of Error One and Two.
CHARACTER EVIDENCE
            In Point of Error Three, Appellant complains that the trial court erred in permitting the State
to present character evidence that was more prejudicial than probative. The trial court found that the
defense had opened the door to admission of the CPS report which substantiated the allegations. 
Appellant argues that this evidence was very damaging and was essentially character evidence. He
also contends that it was actually the State that opened the door.
            During Appellant’s case-in-chief, defense counsel asked Armando Bustamante, the 
superintendent of administration at SISD, why he reinstated Appellant. Bustamante replied that he
“had a very strong suspicion that . . . [Appellant] was being treated very unfairly.” Bustamante did
not believe that Appellant committed the offenses. He had conducted an independent investigation
and found no wrongdoing. On cross-examination, the State inquired into Bustamante’s independent
investigation. Before mentioning the CPS report, the prosecutor approached the bench and argued
that the defense had opened the door for testimony regarding the report. The defense countered that
while Bustamante was asked whether he conducted an independent investigation, he was not asked
on what he based his conclusions. The trial court ruled that the defense had opened the door. The
State then asked Bustamante whether during his investigation he had reviewed the CPS report which
substantiated the allegations. Bustamante admitted that he had. 
Standard of Review
            The admission of evidence is a matter within the discretion of the trial court. Montgomery
v. State, 810 S.W.2d 372, 378 (Tex.Crim.App. 1990). We review evidentiary rulings for an abuse
of discretion. Id. at 379-80. As long as the ruling was within the zone of reasonable disagreement,
there is no abuse of discretion. Id. at 391.
Who Opened the Door?
            Appellant directs our attention to Rodriguez v. State, 974 S.W.2d 364, 367 (Tex.App.--Amarillo 1998, pet. ref’d), in which the defendant complained that the trial court erred in refusing
to exclude evidence of extraneous offenses. The defense asked a witness whether the defendant was
the kind of person to commit sexual assault. Id. The prosecutor then argued that the defense had
opened the door into various crimes for which the defendant had been charged, arrested, or
convicted. Id.
            The court of appeals noted that if an accused creates what is purported to be a false
impression about his nature as a law abiding citizen or his propensity for committing criminal acts,
then he has opened the door for the presentation of rebuttal evidence. Id., citing Delk v. State, 855
S.W.2d 700, 704 (Tex.Crim.App.), cert. denied, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432
(1993), Hammett v. State, 713 S.W.2d 102, 105-106 (Tex.Crim.App. 1986). The court recognized
that trial courts must tread cautiously in this situation and ensure that (1) the defendant opened the
door and (2) that the door was opened far enough to allow the State to use rebuttal evidence. Id.
Only the accused can open the door; the State cannot do so via cross-examination. Id., citing
Hammett, 713 S.W.2d at 105 n.4; Shipman v. State, 604 S.W.2d 182, 184-85 (Tex.Crim.App. 1980). 
Nor may the rebuttal evidence exceed the scope of the question posed by the defense and the answer
given. Id., citing Delk v. State, 855 S.W.2d at 703-05; Hammett v. State, 713 S.W.2d at 105-06. 
            While Appellant argues that it was the State that opened the door, he does not point us to a
particular dialogue in the record where the State does so. In fact, it was the defense that asked
Bustamante whether he conducted an independent investigation and what his conclusions were. At
that point, the State could explore what actions Bustamante took and whether he had reviewed the
CPS report in reaching his conclusion that there had been no wrongdoing.
More Prejudicial Than Probative?
            Next, Appellant contends that the testimony regarding the CPS report was more prejudicial
than probative, served no purpose other than to inflame the jury, and denied him his right to a fair
trial. In order to preserve error for appellate review, the complaining party must make a timely,
specific objection and obtain a ruling. Tex.R.App.P. 33.1(a). The objection at trial must comport
with the error complained of on appeal. Turner v. State, 805 S.W.2d 423, 431 (Tex.Crim.App.),
cert. denied, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). At trial, the defense argued only
that it had not opened the door to admission of testimony regarding the CPS report. No objection
was made on Rule 403 grounds. We overrule Point of Error Three.
DENIAL OF HEARING ON MOTION FOR NEW TRIAL
            In Point of Error Four, Appellant complains that the trial court erred in denying his motion
for new trial without a hearing because he was deprived of his right to prepare an expanded record
to support a claim for ineffective assistance of counsel. Appellant filed a motion for new trial
contending there was crucial information that should have been presented at trial which might have
changed the verdict:
• Appellant suffers from Asperger Syndrome, a neurobiological disorder where autistic-like
behavior with marked deficiencies in social and communication skills are exhibited; 
 
            • There were witnesses who could testify to Appellant’s good character; 

            • State witness Laura Ramirez wanted to recant her testimony; and
 
• No attempt was made to show that Appellant was highly susceptible to police coercion. 

Standard of Review
            The decision to grant or deny a motion for new trial lies within the sound discretion of the
trial court. Salazar v. State, 38 S.W.3d 141, 148 (Tex.Crim.App.), cert. denied, 534 U.S. 855, 122
S.Ct. 127, 151 L.Ed.2d 82 (2001). An appellate court should not substitute its judgment for that of
the trial court, rather, we should decide whether the trial court's decision was arbitrary or
unreasonable. See Lewis v. State, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). We apply the same
standard when the trial court denies the motion without an evidentiary hearing. Reyes v. State, 849
S.W.2d 812, 816 (Tex.Crim.App. 1993). The trial court abuses its discretion when it denies, without
conducting a hearing, a motion for new trial that raises matters outside the record. Reyes, 849
S.W.2d at 816. However, the trial court need not set a hearing if the motion raises matters which
can be determined from the record. See Reyes, 849 S.W.2d at 815-16. 
Requirements of the Motion
            Allegations of ineffective assistance of counsel fall outside the record. Reyes, 849 S.W.2d
at 816; Belton v. State, 900 S.W.2d 886, 901 (Tex.App.--El Paso 1995, pet. ref’d). The trial court
abuses its discretion in failing to hold a hearing on a motion for new trial that raises matters
concerning ineffective assistance of counsel if it is supported by a sufficient affidavit. Reyes, 849
S.W.2d at 816, citing McIntire v. State, 698 S.W.2d 652, 660 (Tex.Crim.App. 1985). The Court of
Criminal Appeals has cautioned that an unrestricted requirement of a hearing on matters not
determinable from the record could lead to fishing expeditions. Consequently, the court has imposed
a prerequisite to obtaining a hearing--motions for new trial must be supported by affidavit, either of
the accused or someone else specifically showing the truth of the grounds of attack. Id., citing
McIntire, 698 S.W.2d at 658; see also, Bearden v. State, 648 S.W.2d 688, 690 (Tex.Crim.App.
1983)(while the Code of Criminal Procedure has never required that a motion for new trial be
verified, the court has continually held that without a supporting affidavit, a motion for new trial
based on matters outside the record is insufficient as a pleading); Hicks v. State, 75 Tex.Crim. 461,
171 S.W. 755, 762-63 (Tex.Crim.App. 1914)(motions for new trial based on facts not in the record
must be supported by affidavits even though statute does not require it). The affidavit is not required
to “reflect every component legally required to establish” relief, but the motion or affidavit must
reflect that reasonable grounds exist for relief to be granted. Reyes, 849 S.W.2d at 816, citing
McIntire, 698 S.W.2d at 658.
            While Appellant’s motion purported to raise a claim for ineffective assistance of counsel, he
failed to attach an affidavit. Since his purported claim of ineffective assistance of counsel was
outside the record, the motion was defective and insufficient as a matter of law. Finding no abuse
of discretion, we overrule Point of Error Four. 
EXTRANEOUS OFFENSES
            In Point of Error Five, Appellant complains that the trial court erred by allowing the State
to present evidence of extraneous offenses during the punishment phase. First, he claims that he did
not receive notice. Second, he contends that the evidence was more prejudicial than probative.
            During the punishment phase, the defense presented fourteen character witnesses to show that
Appellant was a good rule follower and would perform well on probation. On rebuttal, the State
argued that the defense had opened the door to extraneous acts. The extraneous acts included
testimony from bus driver Laura Ramirez that Appellant would stroke and caress Andraya’s hair and
face. Ramirez had reported this conduct to Oscar Anchondo. Appellant was then ordered not to sit
with Andraya, but he continued to do so. When Ramirez left the route, she notified the new driver,
Juana Acosta, about Appellant’s behavior. Acosta also instructed Appellant not to sit with Andraya,
but he did so anyway. Acosta also reported Appellant’s behavior to Anchondo. On another
occasion, Acosta entered the bus to find Appellant sitting with Andraya. Appellant stood up and
acted nervous and Acosta noticed that Andraya’s pants were unzipped. Acosta reported Appellant
to Juan Miranda and Hector Silva.
Standard of Review
            A trial court has considerable discretion in determining whether to admit or exclude
evidence. Montgomery, 810 S.W.2d at 379. We review the trial court’s decision to admit
extraneous offense evidence during the punishment phase of trial under an abuse of discretion
standard. Mitchell v. State, 931 S.W.2d 950, 953 (Tex.Crim.App. 1996). 
Use and Notice of Extraneous Offenses
            An accused may not be tried for some collateral crime or for being a criminal generally.
Tex.R.Evid. 404(b). In the face of a proper objection, evidence of other wrongful acts is not
admissible to prove the character of the person to establish that he acted accordingly regarding the
alleged offense. Montgomery, 810 S.W.2d at 386; Lazcano v. State, 836 S.W.2d 654, 657
(Tex.App.--El Paso 1992, pet. ref’d). An extraneous offense may be admissible if it has relevance
apart from its tendency to prove the character of a person in order to show that he acted in
conformity therewith. Montgomery, 810 S.W.2d at 387; Lazcano, 836 S.W.2d at 657. Evidence
which logically serves such purposes as “proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident” is relevant beyond its tendency to prove
conforming character. Montgomery, 810 S.W.2d at 387; Lazcano, 836 S.W.2d at 657; Tex.R.Evid.
404(b). Extraneous offenses are also admissible to rebut a defensive theory. Crank v. State, 761
S.W.2d 328, 341 (Tex.Crim.App. 1988), overruled on other grounds, Alford v. State, 866 S.W.2d
619, 624 n.8 (Tex.Crim.App. 1993); Yohey v. State, 801 S.W.2d 232, 236 (Tex.App.--San Antonio
1990, pet. ref’d). In addition, evidence may be offered by the State and the defendant as to any
matter the court deems relevant to sentencing, including but not limited to the prior criminal record
of the defendant, his general reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried, and, notwithstanding evidentiary Rules 404
and 405, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable
doubt by evidence to have been committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or finally convicted of the
crime or act. Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a)(1)(Vernon Pamph. 2004-05). Section
3(g) provides that “[o]n timely request of the defendant, notice of intent to introduce evidence under
this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal
Evidence.” Tex.Code Crim.Proc.Ann. art. 37.07, § 3(g). Although relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence. Tex.R.Evid. 403. To claim on appeal that evidence should
have been excluded pursuant to Rule 403, an objection on that basis must be lodged in the trial court. 
Because Appellant did not object on that basis, he has waived the issue. We turn now to the notice
requirements.
            In Jaubert v. State, 74 S.W.3d 1, 2-3 (Tex.Crim.App.), cert. denied, 537 U.S. 1005, 123 S.Ct.
495, 154 L.Ed.2d 403 (2002), the court examined the notice provision within Article 37.07. Under
the plain language of the statute, Section 3(g) incorporates by reference Rule 404(b)’s manner of
giving notice. Id. at 2. Rule 404(b) provides that certain evidence is admissible if “upon timely
request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State’s case-in-chief such evidence . . . .” Id. The court concluded that since the
notice requirement of Rule 404(b) encompasses only case-in-chief evidence, the requirements of
Section 3(g) likewise appear to encompass only case-in-chief evidence. Id. at 3. 
            Appellant placed his suitability for probation at issue by calling witnesses who offered their
assistance in ensuring that he was capable of abiding by the conditions imposed. By doing so,
Appellant opened the door for evidence of specific instances of misconduct that would tend
to mitigate against his suitability for probation. See Murphy v. State, 4 S.W.3d 926, 931-32
(Tex.App.--Waco 1999, pet. ref’d), citing Griffin v. State, 787 S.W.2d 63, 67 (Tex.Crim.App. 1990);
Murphy v. State, 777 S.W.2d 44, 67-68 (Tex.Crim.App. 1988); Anderson v. State, 896 S.W.2d 578,
579 (Tex.App.--Fort Worth 1995, pet. ref’d). Furthermore, Appellant was not entitled to notice of
the State’s use of extraneous offenses in rebuttal. Jaubert, 74 S.W.3d at 3. Evidence offered in
rebuttal cannot be foreseen since the State does not know what theories the accused will advance at
punishment. See Hoagland v. State, 494 S.W.2d 186, 189 (Tex.Crim.App. 1973); Doyle v. State,
875 S.W.2d 21, 22 (Tex.App.--Tyler 1994, no pet.). Finding no abuse of discretion in the admission
of extraneous offenses, we overrule Point of Error Five. Having overruled all issues for review, we
affirm the judgment of the trial court.
 

August 18, 2005                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)