In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00039-CV


______________________________





IN RE:


WASTE MANAGEMENT OF TEXAS, INC.








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Opinion by Chief Justice Morriss



O P I N I O N


 Competing head to head for the waste disposal business in Lamar County, Waste
Management of Texas, Inc., and Josh Bray, d/b/a Sanitation Solutions, are currently litigating Bray's
antitrust, predatory-pricing, claims against Waste Management. In the litigation, Bray initially
sought discovery of, among other things, Waste Management's customer lists and pricing schedules, (1)
a move which Waste Management resisted. Eventually, in May 2007, the parties agreed to a
protective order under which certain information would be recognized as confidential in two tiers:
"Confidential" and "Confidential - Attorneys' Eyes Only."

 "Confidential - Attorneys' Eyes Only" information would be disclosed to Bray's attorneys,
but only for viewing by attorneys and experts, not by Bray or others. (2) In early 2009, Bray sought and
received an order from the Sixth District Court in Lamar County, allowing Josh and Barney Bray to
view the records marked "Confidential - Attorneys' Eyes Only." From that order, Waste
Management has petitioned this Court for mandamus relief. We conditionally grant the requested
mandamus relief, because Bray did not prove necessity for the additional disclosure of the
confidential information.

 Bray contends that his "experts and lawyers lack expertise," and therefore, it was necessary
for Josh and Barney Bray to view the information. The trial court held a hearing February 27, 2009,
that consisted solely of argument of counsel. Each side then submitted a letter brief. The trial court
issued a March 31, 2009, order amending the discovery order and allowing Josh and Barney Bray
to have access to the materials Waste Management maintains are privileged.

 Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion
or the violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law. 
Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of
discretion, or, in the absence of another statutory remedy, when the trial court fails to observe a
mandatory statutory provision conferring a right or forbidding a particular action. Abor v. Black, 695
S.W.2d 564, 567 (Tex. 1985).

 In a situation such as this, where one party opposes discovery sought by the opposing party, 


 the party resisting discovery must establish that the information is a trade secret. The
burden then shifts to the requesting party to establish that the information is
necessary for a fair adjudication of its claims. If the requesting party meets this
burden, the trial court should ordinarily compel disclosure of the information, subject
to an appropriate protective order. In each circumstance, the trial court must weigh
the degree of the requesting party's need for the information with the potential harm
of disclosure to the resisting party.


In re Cont'l Gen. Tire, 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding) (applying Rule 507 of
Texas Rules of Evidence). 

 Though Bray now claims that the material has not been proven to be a trade secret, both
parties seem to have agreed that trade secrets were at issue, as evidenced by their agreement to the
initial order recognizing certain information as confidential and regulating discovery of that
confidential information. (3) We, therefore, turn to Bray's burden to prove to the trial court that his and
Barney's viewing the disputed Waste Management information was necessary to a fair adjudication
of his claims. 

 The party seeking to obtain disclosure of a trade secret must make a particularized showing
that the information is necessary to the proof of one or more material elements of the claim and that
it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. 
In re XTO Res. I, LP, 248 S.W.3d 898, 904 (Tex. App.--Fort Worth 2008, orig. proceeding) (citing
Cont'l Gen. Tire, 979 S.W.2d at 611-12). "[T]he test cannot be satisfied merely by general
assertions of unfairness. Nor is it enough to show that the information would be useful to the party's
expert; the party must show that it is necessary." XTO Res. I, LP, 248 S.W.3d at 904 (citing Cont'l
Gen. Tire, 979 S.W.2d at 611). The trial court is to weigh the degree of the requesting party's need
for the information against the potential harm of disclosure to the resisting party. Cont'l Gen. Tire,
979 S.W.2d at 613.

 In XTO, the expert for the party seeking discovery testified only that access to the disputed
discovery items would be "very helpful" and "of assistance." XTO, 248 S.W.3d at 905. The
appellate court found the party failed to carry its burden of proving that disclosure of the disputed
items was necessary to a fair adjudication of its claims. There was testimony that "at least some of
the underlying data were available from other sources. And [the expert] did not testify that he could
not form an opinion without the requested information." Id. Accordingly, the Fort Worth court held
that the trial court abused its discretion in allowing the discovery. 

 The real result of the trial court's order in the situation before us is that the pool of persons
eligible to view the trade secrets in question, designated "Confidential - Attorneys' Eyes Only," was
expanded to include Josh and Barney Bray. This modification of the previously agreed discovery
order would have the effect of allowing the plaintiffs themselves to see information which the parties
had previously agreed was confidential. At the hearing on Bray's request to modify the discovery
order, Bray offered no evidence to the trial court to establish the necessity of the requested discovery. 
The hearing consisted entirely of argument of counsel. Following the hearing, both parties submitted
short letter briefs to the trial court citing legal authority for their positions. Bray outlined the law on
this topic and claimed he had "shown that the information is necessary for a fair adjudication of the
claim." See Bass, 113 S.W.3d at 739-42. Notwithstanding this assertion, we can find no place in
the record where Bray provided any evidence establishing his need for the information. 

 In Bass, royalty interest owners sued the mineral rights holder, alleging that, when the
mineral rights holder failed to develop the land in question, they thereby breached an implied duty
to the royalty interest owners. The Texas Supreme Court held the royalty interest holders failed to
establish any duty was violated by Bass and, therefore, failed to meet their burden of proving the
requested discovery was necessary. Hence, the Court held the trial court abused its discretion by
ordering Bass to produce the data in question, which the Court held to be trade secrets. Bass, 113
S.W.2d at 745-46. 

 The Waco Court of Appeals addressed similar situations in two cases about ten years ago. 
In both In re Leviton Mfg. Co., 1 S.W.3d 898, 903 (Tex. App.--Waco 1999, orig. proceeding), and
In re Frost, 998 S.W.2d 938, 939 (Tex. App.--Waco 1999, orig. proceeding), the appellate court
found the trial court erred in ordering discovery where the seeking party had failed to demonstrate
the material was necessary. In Leviton, the proponent of receiving the discovery showed only that
the items at issue in the discovery dispute, while possibly relevant to the suit, were different from
the items at issue in the suit. Therefore, the proponents did not establish the necessity of receiving
the items, and the trial court erred in ordering their production. In Frost, the suit was between rival
corporations, and one party wanted discovery of the other's customer list. The Waco court found the
trial court erred when, after finding the list to be a trade secret, it nonetheless ordered its production
(with a protective order in place). This was held to be an abuse of discretion where the seeking party
offered no evidence to support a finding the information was necessary for a fair adjudication of the
claims. Frost, 998 S.W.2d at 939.

 Because Bray failed to offer any evidence showing production of the information at issue was
necessary for a fair adjudication of his claims, Bray did not meet his burden of proof as required by
Continental General Tire. Because the trial court, nonetheless, ordered production, it erred. We
conditionally grant the petition. A writ of mandamus will issue if the trial court does not withdraw
its order of March 2, 2009.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 27, 2009

Date Decided: May 28, 2009
1. The subject of this discovery dispute is Waste Management's "Lamar County customer
names and addresses, Lamar County customer pricing information, and Waste Management's terms
of service for every commercial and industrial customer in Lamar County." 
2. The order, dated May 10, 2007, broadly speaking allows the parties to designate certain
discovery items as "Confidential" or "Confidential - Attorneys' Eyes Only." It appears this was
intended to allow the parties to disclose, as fully as practical, information relevant to the opposing
party's requests, but still protect the respective provider from having his or its privileged information
disclosed to others beyond the terms of the agreed order.
3. Waste Management provided the trial court with an affidavit that addressed many, if not all,
of the factors the Texas Supreme Court has described in determining whether information is a trade
secret. See generally In re Bass, 113 S.W.3d 735, 739 (Tex. 2003) (orig. proceeding). Customer
lists, pricing information, client information, customer preferences, buyer contacts, blueprints,
market strategies, and drawings have all been recognized as trade secrets. T-N-T Motorsports, Inc.
v. Hennessy Motorsports, Inc., 965 S.W.2d 18, 22 (Tex. App.--Houston [1st Dist.] 1998, no pet.). 
We conclude that, because the parties agreed to the confidentiality of the information, we are not
required to address that issue.



span>[DEFENSE COUNSEL]: All right. Let me make this simple. [The State]
added the question, "Did he threaten you with a gun? Were you afraid of imminent
bodily injury?" It's in the indictment. It was alleged that way. A jury said no, he
didn't. Now, [the State] has come in and said that again.

            THE COURT: So you're using a jury verdict in another case to impeach the
witness?

            [DEFENSE COUNSEL]: You bet.

            THE COURT: Okay. I'm not going to allow it.

In short, Macias attempted to introduce a jury verdict in another case—in which he was the
defendant—to impeach Vincent's consistent testimony in this case. Macias argues that, when the
trial court refused to let him do so, it left the jury with a false impression, unduly prejudicing its
members against him. 
 
            Macias' argument, however, is untenable. While the credibility of a witness may be attacked
by any party, such attack must be made within the Rules of Evidence. See Tex. R. Evid. 607. 
Generally, this means that a witness' testimony may be impeached by showing one of three things:
(1) the witness made a prior statement inconsistent with his or her current testimony,
(2) circumstances or a statement indicating that the witness is biased in favor of or has some interest
aligned with the opposing party, or (3) the witness has been convicted of a felony or other crime
involving moral turpitude. Tex. R. Evid. 609(a), 613(a)–(b). Using a prior jury's findings to
impeach Vincent's current testimony, itself consistent with his statements at Macias' earlier trial, fits
none of those categories.
            Macias cites Prescott v. State, 744 S.W.2d 128 (Tex. Crim. App. 1988), and similar cases,
to support his argument that the State "opened the door" as to the validity of Vincent's testimony
when the witness left a false impression during direct examination. Macias complains he should
have been allowed to inform the jury of the earlier verdict in which he was reportedly found not to
have assaulted Vincent. Macias quotes language from Prescott explaining the limitations on
impeaching witnesses through prior convictions.
It is well settled that "an accused puts his character for veracity (as opposed to his
moral character) in issue by merely taking the stand, and thus he may be impeached
in the same manner as any other witness." As with any other witness, an accused
cannot be impeached by a prior offense with which he has been charged unless the
charges resulted in a final conviction for either a felony offense or an offense
involving moral turpitude, neither of which is too remote. An exception to this
general rule arises when a witness, during direct examination, leaves a false
impression as to the extent of either his prior (1) arrests, (2) convictions, (3) charges,
or (4) "trouble" with the police.

Id. at 130–31 (quoting Hammett v. State, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986)) (emphasis
added; citations omitted). The quoted language does not support Macias' position.
            Macias' interpretation of the exception highlighted above apparently extends to any false
impression left by a witness testifying at trial. That is, if the jury in the earlier trial expressly found
that Macias did not point his gun at Vincent's face, that finding should be admitted to impeach
Vincent's testimony before another jury hearing Vincent testify concerning the same event. The
exception, however, does not apply in this situation for a number of reasons.
            First, even if the record demonstrated that another jury completely disbelieved Vincent's
testimony, it would simply inform the present jury of an earlier interpretation of the evidence; the
findings are not themselves relevant in that they have no tendency to make the existence of any fact
that is of consequence to the determination of Macias' guilt more or less probable. See Tex. R. Evid.
401, 402. Contrary to Macias' claim, this is not comparable to a witness testifying that he does not
break the law, opening the door to impeachment through the introduction of evidence that he had
been convicted of two criminal offenses and charged with a third. See, e.g., Davenport v. State, 807
S.W.2d 635, 637 (Tex. App.—Houston [14th Dist.] 1991, no writ). 
            Second, the exception does not extend to just any impression that might be left by a witness
and considered false by the party adversely affected. The witness must leave a false impression as
to the extent of his or her prior arrests, convictions, charges, or "trouble" with the police in order to
warrant impeachment by a prior offense. Prescott, 744 S.W.2d at 131. Vincent's testimony in this 
 
case bears no relation to his own dealings with law enforcement, but only to his perception of the
events leading to Macias' arrest outside the nightclub.
            Third, even if Vincent's testimony did somehow leave a false impression concerning his past
dealings with law enforcement, any evidence of a prior offense introduced to impeach his testimony
would necessarily be limited to an offense or offenses for which he was convicted or charged—not
an offense for which Macias stood trial. Tex. R. Evid. 609(a); Prescott, 744 S.W.2d at 130.
            The evidence Macias attempted to introduce at trial was designed to improperly impeach the
State's witness. As the trial court did not err in excluding the evidence, we overrule this point of
error.
Legal Sufficiency
            In his second point of error, Macias claims the evidence was legally insufficient to support
the allegations of the first count in the indictment. This contention turns on whether a fatal variance
exists between the indictment and the evidence presented at trial. We hold that there is such a
variance and that the evidence fails to support Macias' conviction for unlawful possession of a
firearm by a felon, as alleged.
            The Texas Court of Criminal Appeals explained in Gollihar v. State, 46 S.W.3d 243, 246
(Tex. Crim. App. 2001), that "[a] variance occurs when there is a discrepancy between the
allegations in the charging instrument and the proof at trial" and that, when this happens, it is not that
the state has failed to prove the defendant guilty of a crime, "but has proven its commission in a
manner that varies from the allegations in the charging instrument." This is precisely the situation
now presented on appeal: the State alleged Macias committed a criminal offense in one way, yet
proved another way the offense could be committed.
            Section 46.04(a) of the Texas Penal Code defines two ways by which a person who has
previously been convicted of a felony can be held criminally responsible for unlawfully possessing
a firearm:
            (1) after conviction and before the fifth anniversary of the person's release
from confinement following conviction of the felony or the person's release from
supervision under community supervision, parole, or mandatory supervision,
whichever date is later; or

            (2) after the period described by Subdivision (1), at any location other than
the premises at which the person lives.

Tex. Pen. Code Ann. § 46.04(a). Tracking the language of the first subdivision only, count one of
the indictment states:Guillermo Macias, on or about the 10th day of January, A.D. 2003, and before the
presentment of this indictment, . . . did then and there . . . [, h]aving been convicted
of the felony offense of possession of marijuana on the 25th day of July, 1996, . . .
intentionally or knowingly possess a firearm before the fifth anniversary of the
defendant's release from supervision under community supervision.Clearly, the evidence at trial was legally insufficient to support a conviction under count one of the
indictment.
            After explaining that "sufficiency of the evidence should be measured by the elements of the
offense as defined by the hypothetically correct jury charge for the case," the Texas Court of
Criminal Appeals reiterated that "[s]uch a charge would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the  State's  theories  of  liability,  and  adequately  describes  the  particular
 offense  for  which  the defendant was tried." Gollihar, 46 S.W.3d at 253 (quoting Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).
            Addressing what is meant by a hypothetically correct charge being "authorized by the
indictment," the Texas Court of Criminal Appeals went on to explain that
when the controlling statute lists several alternative acts intended by the defendant
and the indictment limits the State's options by alleging certain of those intended acts,
the hypothetically correct charge should instruct the jury that it must find one of the
intended acts alleged in the indictment. This is the "law" as authorized by the
indictment. Similarly, when the statute defines alternative methods of manner and
means of committing an element and the indictment alleges only one of those
methods, "the law" for purposes of the hypothetically correct charge, is the single
method alleged in the indictment.

Id. at 254–55 & n.20 (citing Curry v. State, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000))
(footnotes and citations omitted; emphasis added). For this reason, we must examine the sufficiency
of the evidence against only the offense as presented in count one of the indictment. If the State
failed to prove that particular count, then it failed to prove that crime and acquittal on count one is
the appropriate remedy. Curry, 30 S.W.3d at 404–05. In light of the State's concession "that the
math cannot be constructed in any fashion to demonstrate that Macias' possession of the pistol was
before the fifth anniversary of his release from community supervision," however, such an
examination is unnecessary. We hold the evidence at trial was insufficient as to the charged manner
and means of committing the offense of unlawful possession of a firearm by a felon.
 
 
            Because we hold the evidence was legally insufficient to support the conviction of felon-in-possession as charged, we must reverse the conviction under count one of the indictment. Therefore,
we do not reach Macias' third point of error.
Conclusion
            Having determined that the trial court did not err in refusing to allow the introduction of
improper impeachment evidence against one of the State's witnesses, we overrule Macias' first point
of error. We sustain, however, point of error two because (1) a fatal variance exists between the
indictment's allegations of count one and the evidence presented at trial, and (2) that evidence is
legally insufficient to support the conviction under count one of the indictment. Accordingly, we
reverse the judgment of the trial court as to count one of the indictment and render a judgment of
acquittal as to that charge. The trial court's judgment is, in all other respects, affirmed.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 11, 2004
Date Decided:             May 7, 2004

Publish