**Opinion issued November 8, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00725-CR

————————————

**KENNIE HINES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 1238499**

## MEMORANDUM OPINION

A jury convicted Kennie Hines of capital murder, and the trial court assessed punishment at life imprisonment without the possibility of parole. *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West 2011). Hines appeals, contending that the trial court erred in (1) refusing to submit a jury instruction on the lesser-included

offense of felony murder, and (2) admitting evidence of Hines's prior convictions for misdemeanor weapons possession and felony aggravated battery. Finding no reversible error, we affirm the judgment of the trial court.

## Background

Late one evening in October 2009, Torren Del, Anthony Maxwell, and some of their friends and relatives were at Maxwell's apartment playing video games and smoking marijuana. Del was a sometime drug dealer and often sold pills on the sidewalk in front of Maxwell's apartment. Around 1:00 a.m., Del received a phone call from an acquaintance, later identified as Hines. Del recognized Hines's voice as that of one of two men who had accompanied someone to buy Xanax from Del the previous night. Hines arrived at Maxwell's apartment shortly thereafter, accompanied by Brandon Johnson and Lance Nero. They planned to buy Xanax from Del. At this point, conflicting stories emerge, one from Del and the others present at Maxwell's home that night, and another from Hines.

Del testified that when he brought the drugs to Hines at the front door of Maxwell's apartment, Hines pulled out a black Glock pistol and attempted to rob Del. Del handed his drug stash to Hines. While Hines's attention was diverted, Del tried to wrestle the gun away from him. The two struggled over the gun in the apartment. Del testified that Hines was holding and waving the gun with his right hand, so Del grabbed Hines's right wrist. As they struggled over the gun, Del heard

2

a shot. Del testified that he did not know who had fired the gun, but knew that it was not Hines's gun. Del explained that his ears would have been ringing from the shot had it come from Hines's gun, because it was close to his head.

After that shot, Hines released Del. Del scrambled on the floor back toward the rear of the apartment and into the living room where Maxwell stood. Maxwell, still unhurt and armed with his own gun, was shooting at Hines. Del heard three or four more shots as he crawled toward Maxwell. When Del started to stand near Maxwell, he heard another shot. Maxwell told Del that he was hit. Del testified that the shot came from behind him, where Hines stood. Del concluded that Hines had fired the shot that killed Maxwell. Del took Maxwell's gun and followed Hines out of the apartment. Del shot four or five times until he emptied his gun. Hines returned fire as he ran away from Del. Del saw Hines fall and then pick himself up enough to stumble away. The testimony of other witnesses in the apartment loosely corroborated Del's testimony; each consistently identified Hines as the man trying to rob Del. None of these witnesses, however, could detail either the struggle or the source of the shot that killed Maxwell.

Hines testified differently. According to Hines, when he arrived at the apartment to buy Xanax, Del, armed with a gun, attempted to rob him. This led to the struggle over the gun. Hines testified that Del held the gun throughout the struggle, and that Del shot him twice as he tried to get the gun away. As the second

3

shot grazed Hines, he immediately heard someone say, "I'm hit, I'm hit!" Hines recounted that he was then shot multiple times as he ran from the apartment. He was in a car accident shortly after leaving the scene.

Maxwell was transported to the hospital where a doctor pronounced him dead. The medical examiner determined that the cause of death was a single gunshot wound to the chest. The same evening, the police found Hines at the scene of a car accident near the apartment complex; they sent him to the hospital to receive treatment for multiple gunshot wounds. After questioning witnesses at the accident scene, the police discovered a black Glock 22, hidden with another gun, behind a fountain near where the police found Hines at the accident scene. The state's firearm examiner identified the Glock as the gun used to kill Maxwell. A DNA analyst for the state determined that Hines was the major contributor of the DNA on the Glock.

At trial, the state impeached Hines with two prior felony convictions: one for aggravated battery and the other for evading arrest in a motor vehicle. The state also asked Hines whether he had been "convicted of unlawfully carrying a .40 caliber Glock 22 weapon." Hines's counsel interrupted with an objection. After an exchange at the bench, the state rephrased its question, asking Hines whether he had been convicted of "unlawfully carrying a weapon, a firearm." Hines answered affirmatively. The state then asked Hines whether he was familiar with firearms

4

and had carried them in the past. Hines responded that he was familiar with firearms and that he had carried firearms in the past, but added that he carried them "for display only." The state responded, "For display. And that aggravated battery by shooting somebody with a weapon, was that for display?" Hines answered yes. Hines confirmed that he was familiar with Glock 22's.

The state also impeached Hines with the prior inconsistent versions of the incident he told to the police. Hines first told the police that he had never entered Maxwell's apartment but had been shot randomly in the parking lot of a night club while he spoke on the phone with a girl from Louisiana. Hines's cell phone records showed that this was not true. Hines later revised his story, telling police that he had gone to Maxwell's apartment complex but that he did not enter the apartment, and had been shot in the parking lot of the complex. Throughout these accounts and in his trial testimony, Hines consistently asserted that he had not handled a gun the night of the shooting. The state also introduced evidence that the police found no blood in the apartment where Hines claimed he had been shot twice but they found a significant amount of Hines's blood in the car and at the accident scene. The police also found no shell casings from the Glock in the part of the apartment where Hines claimed he was shot.

## Discussion

### I.     Lesser-Included Offense

Hines first contends that the trial court erred in failing to instruct the jury on the lesser-included offense of felony murder. We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *See Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). The first step is to determine whether an offense is actually a lesser-included offense of the alleged offense. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *Salinas*, 163 S.W.3d at 741. This determination is a question of law, and it does not depend on the evidence to be produced at the trial. *Hall*, 225 S.W.3d at 535. An offense is a lesser-included offense if established by proof of the same facts or less than all the facts required to establish the commission of the greater offense. TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006). The elements of felony murder are included within the proof necessary for capital murder committed in the course of a robbery; therefore, felony murder is a lesser-included offense of capital murder committed in the course of a robbery. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999); *see* TEX. PENAL CODE ANN. §§ 19.02(b)(3) & .03(a)(2) (West Supp. 2012).

Under the second step, we determine whether some evidence exists that would permit a rational jury to find that the defendant is guilty of the lesser offense

6

but not guilty of the greater. *Id.* at 536; *Salinas*, 163 S.W.3d at 741; *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002). We review all evidence presented at trial to make this determination. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). If the evidence raises the issue of a lesser-included offense, the trial court must charge the jury based on that evidence, "whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted." *Id.* at 672 (quoting *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)).

In this case, the state charged Hines with and the trial court instructed the jury on capital murder in the course of a robbery, and the trial court denied Hines's request for a felony murder charge. Because felony murder is a lesser-included offense of capital murder committed in the course of a robbery, *Hall's* first prong is satisfied. *See Fuentes*, 991 S.W.2d at 272.

Thus, we examine whether some evidence would permit a rational jury to find Hines guilty of felony murder rather than capital murder. A person commits capital murder if he or she intentionally or knowingly causes the death of an individual while in the course of committing or attempting to commit a robbery. TEX. PENAL CODE ANN. §§ 19.02(b)(1) & 19.03(a)(2); *Johhnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992). A person commits felony murder if during the commission or attempt of a felony he or she attempts to commit an act

7

clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3); *Murphy v. State*, 665 S.W.2d 116, 119 (Tex. Crim. App. 1983). The only difference between capital murder and felony murder is that capital murder requires the specific intent to kill, while felony murder requires only the intent to commit the underlying felony. *See Santana v. State*, 714 S.W.2d 1, 9 (Tex. Crim. App. 1986); *Fuentes*, 991 S.W.2d at 272 ("The distinguishing element between felony murder and capital murder is the intent to kill."). Therefore, the record must contain some evidence that would permit a rational jury to find that Hines intended to commit a robbery but unintentionally caused the death of Maxwell by an act clearly dangerous to human life.

Del testified that he heard a shot during his earlier struggle with Hines but that this shot did not come from Hines's gun and was not the shot that hit Maxwell. Del further testified that Hines was responsible for the fatal shot that later came from behind him when Del stood near Maxwell. A jury could have chosen to disbelieve this testimony. However, some affirmative evidence must support the lesser-included charge; thus, it is not enough that a jury may have disbelieved Del's testimony. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) ("It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense.").

8

Hines's testimony likewise does not support a felony murder charge. Hines testified that he did not rob or intend to rob Del but was instead a victim. This testimony precludes any possible finding that he was in the course of committing a felony, an essential element of felony murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(3). Hines maintained that Del had the gun during their struggle and that Del was the one who accidentally shot Maxwell. No evidence in the record suggests that Hines shot Maxwell unintentionally while committing an act clearly dangerous to human life during the course of a robbery: one witness, Del, testified that Hines intentionally shot Maxwell, and the other, Hines, testified that he never shot anyone. *See Murphy*, 665 S.W.2d at 119; *Fuentes*, 991 S.W.2d at 272. Because no affirmative evidence supports a jury instruction on the lesser-included offense of felony murder, the trial court did not err in refusing to give the jury instruction on felony murder.

## II.     Admissibility of Prior Convictions and Details of those Convictions

Hines also contends that the trial court erred in admitting evidence of his prior misdemeanor conviction for weapons possession, details about that conviction, and details of his felony aggravated battery conviction. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial court abuses its discretion only if the court's decision is "so clearly wrong as to lie outside the

9

zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Roberts v. State*, 29 S.W.3d 596, 600, (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). A trial court's ruling falls within this zone if the record and the law applicable to the case reasonably support it. *See De la Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision, even if the trial court gives the wrong reason for its decision. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

"[A]n accused puts his character for veracity . . . in issue by merely taking the stand, and thus he may be impeached in the same manner as any other witness." *Hammett v. State*, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986). Only final felony convictions and offenses involving moral turpitude are admissible to impeach a witness's credibility. TEX. R. EVID. 609(a); *see Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). Even if a prior conviction is admissible to impeach a witness, details of the conviction are inadmissible. *Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986).

Additionally, if an accused voluntarily testifies as to some collateral matter, he may be impeached with prior extraneous acts that would otherwise be inadmissible to show that he has lied or left a false impression as to that matter. *Hammett*, 713 S.W.2d at 105; *see also Theus v. State*, 845 S.W.2d 874, 878–79

10

(Tex. Crim. App. 1992) (holding that a witness may be impeached with otherwise inadmissible prior convictions if he conveys the impression that he has never committed a crime). Otherwise, the defendant would be permitted to "offer outrageous self-flattering remarks" on cross examination that could not be contradicted. *Martinez v. State*, 728 S.W.2d 360, 361 (Tex. Crim. App. 1987); *see Randolph v. State*, 499 S.W.2d 311, 313 (Tex. Crim. App. 1973) (holding that evidence of prior narcotics convictions were admissible after defendant opened the door by making statements that he never sold heroin).

Possession of a firearm is not a crime of moral turpitude, nor was it a felony conviction in this instance. *See Trippell*, 535 S.W.2d at 180 ("a witness may be impeached by prior convictions only if the conviction is for a felony or a misdemeanor involving moral turpitude, and only if a final conviction resulted"). The state stressed that the weapons possession conviction could have been charged as a felony, but Rule 609 requires a final felony conviction, not the mere possibility of such a conviction. *See Trippell*, 535 S.W.2d at 180. The state responds that Hines's testimony that he was an innocent non-violent victim of a robbery opens the door to evidence of the misdemeanor weapons conviction. Testifying that he was an innocent victim in this case cannot amount to conveying "the impression that he has never committed a crime," in light of the rest of Hines's testimony. *See Theus*, 845 S.W.2d at 879. Hines admitted to purchasing

11

and using illegal drugs—even that he was purchasing illegal drugs that night—and admitted to two prior felonies. Hines's criminal history was in the open; thus, we hold that his testimony did not create a false impression such that evidence of extraneous crimes was admissible to rebut that impression. Accordingly, the trial court erred in admitting evidence of this conviction.

The trial court, however, did not abuse its discretion in admitting the details of Hines's aggravated battery conviction. On cross-examination, Hines was asked whether he had carried a gun in the past. He replied that he did, but added "for display only." This voluntary exculpatory statement that Hines carried a gun in the past only for display gave the false impression that Hines had never used a gun. *See Randolph*, 499 S.W.2d at 313. The state was permitted to question Hines about the details of his prior aggravated battery conviction, for which he was convicted of shooting someone—the use of a firearm for more than mere display—to correct the false impression left by Hines. *See Hammett*, 713 S.W.2d at 105.

## III. Harm Analysis

Because the trial court erred in admitting Hines's misdemeanor weapons conviction and the details of that conviction, we must determine whether this error was harmful. Error in the admission of evidence is non-constitutional error subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b); *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—

12

Houston [1st Dist.] 2008, no pet.). We disregard any non-constitutional error that does not affect a defendant's substantial rights by having a "substantial and injurious effect or influence in determining the jury's verdict." *Jabari*, 273 S.W.3d at 754 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)); *see* TEX. R. APP. P. 44.2(b). We should not reverse a conviction for non-constitutional error if, after examining the record as a whole, we have "fair assurance that the error did not influence the jury, or had but slight effect." *Jabari*, 273 S.W.3d at 754 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)); *see* *Hankins v. State*, 180 S.W.3d 177, 182 (Tex. App.—Austin 2005, pet. ref'd) ("[W]e consider the entire record, including testimony, physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, the State's theory, the defensive theory, and closing arguments."). The improper admission of evidence does not constitute reversible error if other properly admitted testimony proves the same facts. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

Properly admitted testimony and other evidence introduced at trial proved the same facts the state sought to prove with the evidence of the weapons possession conviction. *See id.* After questioning Hines about the weapons conviction, the state asked whether Hines had carried a gun in the past and was familiar with firearms, including Glocks. Hines replied affirmatively without

objection. The state also properly admitted testimony of Hines's previous felony aggravated battery conviction for which he was convicted of shooting someone. Therefore, it was clear from other evidence at trial that Hines was familiar with handguns and had handled them in the past.

Furthermore, Hines's credibility had already been impeached with two prior felony convictions and evidence that he had told multiple conflicting stories regarding the events of the night in question to investigators. The physical evidence introduced by the state also contradicted Hines's story. The police found no blood nor any shell casings from the Glock where Hines claimed he had been shot twice in the apartment. Although Hines claimed he did not have a gun that night, the police discovered the Glock used to shoot Maxwell at the scene of Hines's car accident. An analysis of the Glock found primarily Hines's DNA on it. For all these reasons, we conclude that the error did not have a substantial or injurious effect in determining the jury's verdict or otherwise affect Hines's substantial rights so as to warrant reversal. *See Brooks*, 990 S.W.2d at 287.

### Conclusion

We hold that the trial court did not abuse its discretion refusing to submit a jury instruction on the lesser-included offense of felony murder, because no evidence at trial supported an inference that, if Hines was guilty, he was guilty only of felony murder. We further hold that the trial court erred in admitting

14

evidence of Hines's prior misdemeanor conviction, but we conclude that this error did not have a substantial and injurious effect on the jury's verdict in light of the other evidence and the trial record as a whole. Finally, we hold that the trial court did not abuse its discretion in admitting testimony regarding the details of Hines's aggravated assault conviction. Accordingly, we affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).