PD-1292-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/9/2015 12:00:00 AM
Accepted 2/11/2015 1:55:41 PM
ABEL ACOSTA
CLERK

No. PD-1292-14

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS

**Candelario Cerda, Jr.**
Appellant

v.

**The State of Texas**
Appellee

On Appeal from the District Court of Caldwell County, in Cause No. 2010-082 the Hon. Todd Blomerth presiding, and the 22 August 2014 Opinion of the 3rd Court of Appeals in Case No. 03-12-00582-CR

**Petition for Discretionary Review**

FILED IN
COURT OF CRIMINAL APPEALS

February 11, 2015

ABEL ACOSTA, CLERK

Submitted by:

EDMUND M. DAVIS
State Bar Number 24028272
PO Box 201123
Austin, Texas 78720
Office Phone: (512) 478-7381
Email: attorney.skip.davis@gmail.com
Attorney for Appellant

This PDR is submitted on appeal from the judgment of the 3rd Court of Appeal which sat in review of Mr. Candelario Cerda's conviction by jury.

**Todd Blomerth** was the judge sitting as the 421st District Court of Caldwell County for the jury trial.

**The Honorable Richard "Trey" Hicks III** was the District Attorney at the time of trial.

The Honorable Mr. Richard "Trey" Hicks
Caldwell County District Attorney      Phone: 512-398-1811
1703 South Colorado St.      Fax:    512-398-1814
Box 5
Lockhart, TX 78644

**The Honorable Mr. Fred Webber** is the current district attorney.

The Honorable Mr. Fred Webber
Caldwell County District Attorney      Phone: 512-398-1811
1703 South Colorado St.      Fax:    512-398-1814
Box 5
Lockhart, TX 78644

**The Honorable Edmund M. "Skip" Davis** was Defendant's counsel at trial.

The Honorable Mr. Edmund M. Skip Davis
PO Box 201123
Austin, TX 78720
Phone: (512) 698-2215
Email: attorney.skip.davis@gmail.com

**Mr. Candelario Cerda, Jr**., is the actual party in interest who is currently incarcerated in the Texas Department of Corrections.

Mr. Candelario Cerda, Jr.
TDCJ Number 01919125
Holliday Unit
295 IH-45 North,
Huntsville, TX 77320-8443

# Table of Contents

Index of Authorities iv

Statement Regarding Oral Argument v

Statement of the Case v

Statement of Procedural History vi

Abbreviations vii

Facts of the case 1

Grounds for Review

**Ground Number 1** **5**
The Court of Appeals Erred in
over-ruling the Backdoor Hearsay Complaint

**Ground Number 2:** **10**
The Court of Appeals Erred in its
Interpretation of Defense Counsel Attempt
to Impeach Officer Balderamas Regarding
the Incident at Texas State University Parking
Garage as a Collateral Matter.

**Ground Number 3:** **12**
The Court of Appeals Erred by Overruling
Point of Error Number 3, that the
Defendant Failed to Preserve Error Regarding
the Trial Court Refusing to Hold a Hearing
Outside the Presence of the Jury Regarding
Officer Harrison's Testimony.

**Ground Number 4:** **15**
The Court of Appeals Erred by Overruling
Defendant's Point of Error That He
Was Denied the Opportunity and the Right
to Put on a Meaningful Defense.

**Ground Number 5:**         **20**
The Court of Appeals Erred by Overruling
Defendant's Point of Error that the evidence
was insufficient.

Prayer for Relief      22

Certificate of Service and Certificate of Compliance    24

Appendix    25

# Index of Authorities

## Federal Cases

*Jackson v. Virginia*, 443 U.S. 307 (1979)

## Texas Cases

*Wiley v State*, 74 S.W.3d 399 (Tex. Crim. App. 2000)

*Hammer v. State*. 296 S.W. 3d 555 (Tex. Crim. App. 2009)

*Harrell v. State,* 884 S.W.2d 154 (Tex. Crim. App. 1994).

*Reyna v. State*, 168 S.W.3d 173 (Tex. Crim. App. 2005)

*Schaffer v. State*, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989)

## Cases from Other Jurisdictions

None

## Federal Constitution

US 14th Amendment

## Texas Constitution

Article 1 Section 10 Texas Constitution

## Texas Statutes / Codes:

Rule 802 Texas Rules of Evidence

Rule 403 Texas Rules of Evidence

## Statement Regarding Oral Argument

Petitioner believes oral argument would be helpful to the Court because the issues raised are issues of constitutional dimension and the public policy behind resolution of these issues could be better discussed in the context of oral argument, where the Court can ask questions and consider alternatives that counsel are prepared to discuss.

## Statement of the Case

Appellant was accused of having sexual relations with 2 minor girls who were allowed to consult with one another before making statements to Law Enforcement and Appellant asserts that the Court of Appeal was incorrect in overruling his points of error raised on direct appeal:

1. That trial court allowed Back door hearsay;

2. That trial court refused Defense Impeachment Evidence

3. That trial court allowed Extraneous Offense Evidence without *Harrell* hearing;

4. That trial court denied Appellant his right to present a meaningful defense;

5. Sufficiency of the Evidence

Appellant Candelario Cerda Junior was accused by VR, a minor girl, of having sex with her. VR was discovered missing by her parents after sneaking out of her house during the night. VR also accused Appellant of having sex with another minor girl, FF. FF initially denied the allegation, but FF later also accused Appellant of having sex with her only after FF met privately with VR. The physical evidence was and remains lacking. The DNA excludes Appellant and there is otherwise absolutely zero independent evidence corroborating the story of these two girls. Appellant presented an alibi and denied the allegations from the start. Appellant continues to maintain his innocence today.

## Statement of Procedural History

The following is a summary of the procedural history of the instant case:

Appellant was charged by indictment with the offense of Sexual Assault of a Child a felony in Cause No. 2010-082 in the District Court of Caldwell County, Texas. Appellant was convicted in said cause and sentenced to 10 years in the penitentiary for each of two counts. Trial Judge ordered the terms of incarceration to be served consecutively. Notice of Appeal was timely given. The Court of Appeals opinion from which review is sought was delivered by the 3rd Court of Appeals, in Case No. 03-12-00582-CR which was delivered on 14 August 2014. Appellant did not file a Motion for Rehearing.

**Abbreviations**:

In this PDR the Appellant uses shorthand to describe the location where information can be found in the Trial Court Reporter's Record. The abbreviation is v is for volume followed by the volume number, followed by a colon followed by the page number on which the information is located. For example v5:127 translates as Volume #5 page 127.

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

COMES NOW, Candelario Cerda, Junior Appellant in the above styled and numbered cause, by and through Edmund M. Davis his undersigned pro bono attorney of record, and respectfully files this "Petition of Discretionary Review," and would show the Court as follows:

## Facts of the Case

Candelario Cerda, Jr. was convicted by a jury of 2 counts of Sex Assault of a Child involving two different teenaged girls. He was sentenced to 10 years for each count, which the trial court ordered he serve consecutively.

At trial, one girl, VR, testified that she snuck out of her parents house one evening and rendezvoused with Appellant at a nearby H-E-B grocery store parking lot. She testified that she had sex with Appellant in his truck while parked at a vacant lot in a residential neighborhood in Lockhart, Texas.

VR testified that Appellant was the Music Minister at a church that she and her family sporadically attended. She testified that this was the one and only time that she had sex with Appellant. She also testified that she told Detective Nichols that she knew of one other girl with whom Appellant had

1

relations, but she also testified that she had not spoken with the other girl about any sexual conduct with Appellant, and that the other girl had not in fact told her anything. VR testified that she told Detective Nichols that FF was the other girl. FF initially denied any involvement when confronted by Detective Nichols at the Police Station. But several hours later, after VR and FF had a clandestine meeting, FF also announced that she had been having sexual relations regularly with Appellant for about six months, approximately 100 times. FF testimony was remarkably similar to VR testimony about the sex.

Several lay witnesses testified for the State at guilt-innocence phase of trial: VR's father (a juvenile probation officer), VR's two brothers, and the manager from a car wash who testified that he personally detailed Appellant's truck, but he was impeached and proven a liar under cross-examination.

Several professional witnesses testified for the State including a therapist and counselor from Roxanne's House (a local child advocacy center), a diagnostician from the school VR attended, the lead investigator Detective Nichols who testified that the Sexual Assault Nurse Examiner examined VR and carefully collected evidence from VR, to include trace evidence.

2

Detective Nichols testified that the SANE declared that she had recovered semen from VR's during medical Sex Assault examination. The Sexual Assault Nurse Examiner herself denied ever having said that, but acknowledged that she recovered a significant amount of fluid from VR vagina. Detective Nichols also testified that he personally participated in and supervised the forensic investigation of Appellants truck where the majority of the sex with FF and the only sex w VR was said to have occurred. Detective Nichols removed the entire backseat from Appellant's vehicle and sent the entire seat up to DPS DNA lab in Austin for analysis. The DPS DNA technician who wrote the DPS DNA memorandum in which no DNA evidence was detected indicating that anybody had sex with either VR or with FF, also testified. He further testified that there was no semen in the fluid recovered from VR, and that there was absolutely no trace or hair evidence implicating Appellant.

Two other law enforcement witnesses from San Marcos testified that they had encountered Appellant and FF in separate unrelated prior instances. One incident was in a parking garage at the local university.

3

Appellant put on a case that included his own SANE who had impeccable credentials and established that there is no way that any SANE can determine by simple empirical inspection if semen is present in a body fluid sample, and that VR physical state was consistent with just having had sex, but not consistent with having had sex in a vehicle. In fact, the dirt on her knees indicated that she might have had sex in the out of doors.

Appellant brought a forensic child psychologist who confirmed that FF suffered from a profound state of schizophrenia, and heard voices, and suffered from visual and auditory hallucinations during the period that she claimed she was having sex with Appellant. The child psychologist also established that FF was hospitalized for these conditions. FF testified that she had stopped taking her medication during the period that she accused Appellant of having sex with her.

Appellant presented testimony from several lay witnesses. Appellant's mother and his sister both presented the jury with Appellant's alibi regarding the VR accusations, that Appellant had not left the house on the night in question. The pastor at the church testified that Appellant handled the music for the small congregation, and testified that he believed that it was not

4

possible for Appellant and FF to have had sex in his church in the manner as she described.   Appellant did not take the stand in his defense.

## Ground for Review Number One

**The Court of Appeals Erred in over-ruling the Backdoor Hearsay Complaint**

## Facts Relevant to First Ground for Review

The testimony of Melissa Rodgriguez and Stephanie Watts, both of whom are professional witnesses who each testified previously in similar sex cases involving children as complaining witnesses, communicated Backdoor Hearsay in their responses to direct examination by State's attorney during the State's case in chief. Direct testimony would have surely invoked the standard hearsay objection.

## Argument & Authorities - Ground Number One

What makes backdoor hearsay objectionable is that the witness gives testimony that serves to do impliedly what she could not do directly: Rodriguez communicated hearsay information to the jury and, by implication,

in describing the demeanor of the children, thereby suggested that the behavior of the children is consistent with that of children who are sexually assaulted, thereby bolstering the alleged victims. The Court of Appeals makes it clear that it recognizes that Ms. Rodriguez testified about the common characteristics of victims of child sexual abuse and testified that both girls exhibited some of that behavior.[1] Forensic examiner testimony about how a child's behavior and demeanor being consistent with child sex assault is not only bolstering and vouching, but it is the central aspect in the definition of hearsay because that demeanor information is "offered for the truth of the matter asserted." Rule 802 TRE. Defense counsel properly objected after the voir dire examination of witness Stephanie Watts that her testimony regarding behavior and demeanor amounted to backdoor hearsay, but the initially sustained Defense objection. (RR v8:195). The court then later reversed its initial proper ruling and allowed the testimony, again over strong Defense objection. (RR v8:205).

Says the Court of Appeals on page 7:

> "Because the content of the girls' out-of-court statements were not directly presented in the testimony of the forensic

---

1 See the Opinion at page 20 attached as exhibit 1.

> interviewer or V.R.'s father, we are unable to conclude from the record that the State's sole intent in offering the complained-of testimony was to convey the content or substance of any of the girls' out-of-court statements."

That conclusion is entirely wrong and the logic fails. The point of Backdoor Hearsay is to get around the improper hearsay communicated in a witness' testimony. _Schaffer v. State_, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989). In this case, witnesses Melissa Rodriguez and Stephanie Watts simply substituted their own testimony about the children's demeanor for the prohibited out of court hearsay statements made by the children. Just as a simple shrug of the shoulders can be a statement, describing behaviors like self-harming and other forms of acting-out as behaviors consistent with child victims of sex abuse is just like any direct testimony: that the alleged victim behaved in a particular way because this alleged victim told me so confirms she is telling the truth. But it is a prohibited hearsay statement nonetheless.

Now lets turn to VR's father Randy Rodriguez' testimony. Just as in _Schaffer_, where the Prosecutor asked: "without telling us what she said, what did you do next?" The question acknowledges the implied improper hearsay content of response without asking for it directly.

7

In this case, State's attorney asked, "What did you do next?" This question, just like in _Schaffer,_ begs the predicate: what did VR tell you? Prosecutor avoids the hearsay objection simply by asking what appears to be an innocuous question. But in fact the intent of the question is to elicit a comment about just what was that terrible thing that VR could have possibly told her father that would generate that sort of violent reaction from him.

Randy Rodriguez answered that "I got my keys to drive over to his Appellant's house where I was gonna beat him up," or words to that effect.

The hearsay suggested therein is that VR told her Father that she was "raped" by Appellant, otherwise there is no reason for VR Father to get ready to go beat up Appellant. That is backdoor hearsay: That she said something that made him that mad. It's hearsay and bolstering without asking the question directly. It is certainly creative, artful, but it is prohibited.

The Court of Appeals drops a footnote in which the Court incorrectly concludes that Defense Counsel was late in making his objection. Court of Appeal incorrectly applies _Reyna v. State_ in a way that would severely hamstring lawyers by requiring trial counsel to object to all questions in every case in advance of the response by the witness. That sort of policy is just not

practical if applied in such a manner for each and every question asked. An application as suggested by the Court of Appeals would require some sort of a preemptory objection, which would also require the counsel to be both clairvoyant and a mind reader: Clairvoyant by correctly guessing that the response is going to be objectionable, and a mind reader by divining what actual purpose the prosecutor might have in asking a particular question, or what motive the witness might have, and how he might shape his answer toward that end.

And what of the case where the counsel guesses correctly that the question has no objectionable features, but the response by the witness is objectionable? Is counsel then to be penalized for not having correctly guessed that the witness might give an objectionable answer to the question even if the basis for the objection does not arise until after the answer is uttered? Is counsel forever "stuck with" that answer because he was unable to devine every possible response from the witness? If that is the case, then why do we have limiting instructions to tailor objectionable testimony and evidence to a specific purpose?

9

It is not necessarily the question, but often it is the response that is prohibited by the hearsay rule.

## Conclusion - Ground Number One

That the Court of Appeals erred and Ground Number One should be approved and the Court of Criminal Appeals should reverse the Court of Appeals.

## Ground for Review Number Two

**The Court of Appeals Erred in its Interpretation of Defense Counsel Attempt to Impeach Officer Balderamas Regarding the Incident at Texas State University Parking Garage as a Collateral Matter.**

## Facts Relevant to Second Ground for Review

At trial, the State was allowed to introduce evidence of this incident as an extraneous offense over strenuous Defense objection. (RR v____:___). The Court of Appeals declared that the entire incident was a collateral matter and that impeachment of this witness would have been improper.

10

## Argument & Authorities - Ground Number Two

The Defense contention is that the Officer Balderamas testimony is only collateral in that the event he was involved in was not an offense that was charged by indictment or information. It should not be a collateral matter if the State presents extraneous evidence and then heavily relies on that extraneous evidence in prosecuting its case. It is true that Officer Balderama's memory might be a collateral or even irrelevant issue for the indicted offenses, however, whether Officer Balderama was being truthful was important to whether FF was telling the truth about her involvement in the Texas State Garage incident. Defense counsel intended to show that in refreshing the Officer's recollection or by publishing the video to impeach the officer with the jury, the jury would have seen that the fleeting figure in no way resembled FF and was only visible for a scant few seconds, thereby calling Officer Balderama's credibility into question.

Here the Court of Appeals wrongly concluded that impeaching Officer Balderamas is a collateral matter. The trial court made Officer Balderamas testimony a central issue by allowing the State to put on his testimony as extraneous offense evidence. The State should not be allowed to introduce

11

the offense and then claim that the same evidence is a collateral issue thereby making adverse party attack on the witness' testimony improper.

## Conclusion - Ground Number Two

Appellant was entitled to put on evidence or cross-examine a witness in an effort to prove that he is not guilty of the extraneous offense. To not allow it is to deny procedural due process, and the Court of Appeals erred in its interpretation of impeaching Officer Balderamas during cross-examination as a collateral issue on which impeachment evidence is prohibited. The Court of Appeals should have sustained the Point of Error and the Court of Criminal Appeals should reverse.

## Ground for Review Number Three

**The Court of Appeals Erred by Overruling Point of Error Number 3, That the Defendant Failed to Preserve Error Regarding the Trial Court Refusing to Hold a Hearing Outside the Presence of the Jury Regarding Officer Harrison's Testimony.**

## Facts Relevant to Third Ground for Review

12

Officer Harrison appeared as a rebuttal witness for the State. Officer Harrison was not previously identified pre-trial as a witness against Appellant. Appellant objected to his testimony and was over ruled.

## Argument & Authorities - Ground Number Three

The Court of Appeals wrongly concluded that the issue was not preserved for appeal. In fact a careful review reveals that Defense counsel requested a _Harrell_ hearing. The trial court improperly denied the hearing without further comment. (RR vol 11:162).

The trial court should have held a hearing outside the presence of the jury under the procedure outlined in Harrell v State, to determine the admissibility of the extraneous offense by way of the testimony of Officer Harrison. Harrell v. State requires that extraneous offense evidence be subject to a hearing outside the presence of the jury. _Harrell v. State,_ 884 S.W.2d 154 (Tex. Crim. App. 1994).

The _Harrell_ case stands for the proposition that it is improvident NOT to conduct the hearing when requested. Harrell also does not dictate precisely when the hearing should occur, except to say that the hearing should be used as a gatekeeper to prevent cumulative or unduly prejudicial evidence from

13

getting to the jury and is a process intended to protect the Defendant's constitutional right to due process. There is no reading of _Harrell_ that supports the notion that a trial court should not conduct the _Harrell_ hearing under certain proscribed circumstances.

The Defendant did not waive the issue. The jury was in the box, the witness was on the stand, and the trial court should have conducted the hearing before allowing any further testimony than that which was elicited up to that point. After having conducted the hearing, had it determined that the evidence was not proper, the court could have instructed the jury to disregard Harrison's testimony, as it did previously with defendant's witnesses during the Defendant's case in chief. The trial court should be concerned first and foremost about justice first and ensuring that a fair trial is had. **_Jackson v. Virginia_**, 443 U.S. 307 (1979). The witness was still on the stand, and the Defense specifically requested the hearing.

The testimony that followed the improperly denied Defense request for a _Harrell_ hearing was terribly prejudicial, and the procedure to examine the proffered testimony was properly invoked. Had the hearing been conducted, the Defense would have easily established that there was no bad act about

14

which the witness could testify. The testimony was not relevant to the offenses for which Appellant was standing trial, and the officer's testimony was damaging in that the witness suggested that FF and Appellant were engaged in some sort of illegal sex act, with her panties found under the car seat, when in fact the panties were too large for a small framed 14-year old teenager. Simply mentioning that he discovered a pair of woman's panties in Appellant's vehicle alone was enough to inflame the jurors emotions. Bill of Exception / Offer of Proof was made on the record. (RR v11; 243).

## Conclusion - Ground Number Three

That the Court of Appeals erred by deciding that Appellant failed to preserve error regarding his complaint about the trial court refusing to hold a *Harrell* hearing, and that his Point of Error at the Court of Appeals should have been sustained and the conviction reversed.

## Ground for Review Number Four

**The Court of Appeals Erred by Overruling Defendant's Point of Error That He Was Denied the Opportunity and the Right to Put on a Meaningful Defense.**

## Facts Relevant to Fourth Ground for Review

15

Appellant attempted to present evidence at trial through a Sex Assault Nurse Examiner (SANE) witness that VR injuries were not consistent with her story about having sex w Cerda in a truck when there was dirt on her knees and her clothing was soiled. He also attempted to establish through a different witness testimony that FF had previously made false outcry of sex assault by another man who actually fathered a child with her. Appellant attempted to introduce documentary evidence that not only did the DNA exclude Appellant, but that the hair and trace evidence recovered at the crime scene and by Law Enforcement excluded him and each of the alleged victims as contributors.

## Argument & Authorities - Ground Number Four

The Court of Appeals contends that Appellant did not make a proper record, in the form of an offer of proof, or a Bill of Exception in the alternative, regarding several issues which the Court of Appeals correctly identified as collectively forming the basis for this particular point of error. Court of Appeals cited **_Reyna v. State_**, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (stating that purpose of requiring objection is to give trial court or

opposing party opportunity to correct error or remove basis for objection.) In this case, Appellant asserts

that his offers of proof are synonymous with objections, and his offers of proof were timely made.

In fact, Appellant made several offers of proof during trial and an additional set of offers of proof at the conclusion of trial, addressing several pieces of physical evidence or documents and/or testimony. (see below for specific cites to each issue in the Reporter's Record)( generally the post-testimony record of offer of proof is at RR v11: 226 and v11:243). Throughout the offers of proof Appellant complains that his right to present a defense was severely hampered and improperly limited.

The following are the offers of proof that are at issue and directly impacted Appellant's complaint that he was not allowed the opportunity to put on a full and fair case:

1.  evidence of a potential alternative perpetrator for V.R.'s sexual assault, Offer of  proof of a potential alternative perpetrator for V.R.'s sexual assault, is found at (RR v11:234 and 238). Full explanation for the offer of proof was made in accordance with Reyna v State.

2.  evidence of F.F.'s pregnancy at the time of the SANE exam, combined with the paternity information on FF's two children's Birth Certificates

would have established Defendant's alternative perpetrator theory. The alternative perpetrator in this case was Soccoro Aguilar who not only had motive and opportunity, he actually DID commit the crime of sexual assault of a child, as evidenced by the birth certificates! Offered as Defense Exhibits 6 and 7 (RR v10:127)   Offer of proof (RR v10:127). Full explanation for the offer of proof was made in accordance with *Reyna v State* and *Wiley v. State* _____.

3.  F.F.'s actual medical records from her stay in a psychiatric hospital, were denied admission into evidence at trial but were offered as Defendant's exhibit 10. (RRv10:126) Offer of proof made timely. (RR v10:135). Full explanation for the offer of proof was made in accordance with Reyna v State. Basically this information was relevant and would have been used to impeach both State's witnesses Melissa Rodriguez and Stephanie Watts regarding whether the issues each testified about actually arose as a result of Appellant's alleged sexual assault, and would have proved that many of those characteristics such as suicidal ideation and self-mutilation occurred prior to FF purported sexual involvement with Appellant. (RR v10:138)

4.  DPS lab reports. Offer of Proof made timely. (RR v10:131) and again at (RR v12:24). The documents were offered for admission as Defense Exhibits 2 and 3 but the trial court refused each. These most important documents were marked as Defense Exhibits 3 and 4.(RR v9:75) These documents rule out Defendant as a contributor to any DNA evidence or trace material evidence collected. This evidence is exculpatory and was central to the defensive theory of the case. Full explanation for the offer of proof was made in accordance with Reyna v State.

5.  opinion testimony regarding F.F.'s truthfulness and unreliability as a witness: the Court of Appeal incorrectly concludes that Defendant complains about inability to develop reputation testimony. What Defense sought to develop was that FF had a motive to lie or was biased and that her testimony was colored in a way to obfuscate her bias, and Defense counsel intended to use *Hammer v. State*  as the vehicle to

18

engage in that inquiry. The trial court acknowledged that it was put on notice and accepted the in-camera review as Defendant's offer of proof. (RR v10:206).

6.    testimony about a prior false allegation of sexual assault made by F.F., the trial court erred by not allowing the testimony of Laura Cerda regarding the prior false allegations of sex assault to which Laura Cerda was witness. (RR v10:204). Defense counsel intended to use *Hammer v. State* as the vehicle to engage in that inquiry. The trial court acknowledged that it was put on notice and accepted the in-camera review as Defendant's offer of proof.   (RR v10:206)   Full explanation for the offer of proof was made in accordance with *Reyna v State*.

7.    the detective's arrest warrant affidavit concerning the sexual assault of V.R.,   Detective Nichols' affidavit included information regarding the actual investigation of the allegations of sexual assault, and more specifically omits information regarding an alternative perpetrator named Jeremiah who had opportunity, motive, and actually solicited VR to engage in sex and smoked illegal marijuana with her as he propositioned her.

8.    rebuttal testimony from the SANE nurse who examined V.R. is incorrectly stated.
Defendant sought to introduce evidence that contradicted the testimony of the State's SANE witness by using SANE Laurie Charles as a rebuttal witness during his case in chief. (RR v10:143). Full offer of proof was timely made.

9.    evidence of V.R.'s juvenile record: Objection to trial court excluding VR's juvenile records is found at Defense offer of proof at the conclusion of the presentation of guilt-innocence evidence. (RR v11: 231). Full explanation for the offer of proof was made in accordance with *Reyna v State*.

10. Statement by Randy Rodriguez was denied as Defense Exhibit 2 and offer of proof was made timely during trial. (RR v10:130). Defense intended to impeach Mr. Rodriguez because his testimony was a recent deviation from his sworn statement given to Law Enforcement. Full explanation for the offer of proof was made in accordance with *Reyna v State*.

11. testimony demonstrating the detective's "shoddy investigation," was attempted but denied by the court where Defense counsel sought to introduce the Detective's own Affidavit as evidence in the case. Offer of proof was made in accordance with *Reyna v. State*.

# Conclusion - Ground Number 4

That the Court of Appeals erred by overruling Appellant complaint that

he was denied the right to put on a meaningful defense, and that his Point of

should have been sustained and the conviction reversed.

# Ground for Review Number Five

**The Court of Appeals Erred by Overruling Defendant's Point of Error that the evidence was insufficient.**

## Facts Relevant to Fifth Ground for Review

The Court of Appeal ignored that the Appellant put on an independent

case at trial and did not simply stand mute and argue that the facts were

insufficient on their own merit. The Defense put on a forensic child psychologist, a SANE nurse, and several fact witnesses who directly disputed the alleged victim version of events, or the conclusions reached by the State's professional witnesses.

## Argument & Authorities - Ground Number Five

The Court of Appeals incorrectly rejected Appellant's complaint by assuming that the prosecution's evidence that was submitted to the jury was the <u>only</u> evidence that was submitted to the jury, and entirely disregarding the strength of evidence presented by Appellant and the effectiveness of Appellant in impeaching several witnesses. If the Court of Appeal had properly weighed the evidence on both sides of the case and given most weight to the <u>independent evidence</u> then the Court of Appeal should have come to the opposite conclusion. The prosecution evidence alone might actually be sufficient to sustain a conviction, but the Defense put on a vigorous and robust case with both expert and fact witnesses who contested the Prosecution's conclusions. By not giving the defensive evidence or effectiveness of the Appellant's impeachment of State's witnesses any weight, the Court of Appeals came to the incorrect determination that the jury analyzed all of the

evidence and that their analysis was proper and the evidence is sufficient simply because the jury returned a conviction. In this case, there is just too much powerful and convincing evidence that these events that the alleged victims complain about simply never occurred. Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979);

## Conclusion - Ground Number 5

That the Court of Appeals erred by overruling Appellant complaint that the evidence was insufficient given the quality and breadth of defense evidence and the absence of independent physical evidence. Appellant' Point of Error should have been sustained and the conviction reversed.

## **Prayer for Relief**

WHEREFORE, PREMISES CONSIDERED, Candelario Cerda Junior, the Appellant in the above styled and numbered cause respectfully prays that the Court will grant Discretionary Review of the instant case, and upon

submission of the case will reverse the Court of Appeals who denied each and every one of the Points of Error raised on direct appeal of the trial court actions.

EDMUND M. DAVIS
State Bar Number 24028272
PO Box 201123
Austin, Texas 78720
Office Phone: (512) 478-7381
Email: attorney.skip.davis@gmail.com

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using Microsoft Word software, contains 4,468 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on 09 January 2015, a true and correct copy of the above and foregoing Petition for Discretionary Review was either mailed via USPS or hand-delivered or transmitted via telecopier (Fax: 512-398-1814) to The Honorable Mr. Fred Webber, Caldwell County District Attorney, 201 E. San Antonio Street Lockhart, Texas, 78644

//Electronically Signed//
EDMUND M. DAVIS
State Bar Number 24028272
PO Box 201123
Austin, Teas 78720
Office Phone: (512) 478-7381
Email: attorney.skip.davis@gmail.com

# Exhibit "A"

Court of Appeals' Opinion of
22 August 2014 Opinion of the 3rd Court of Appeals in Case No.
03-12-00582-CR

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00582-CR

**Candelario Cerda, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT NO. 2010-082, THE HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Candelario Cerda of two counts of sexual assault of a child and for each count assessed his punishment at confinement for ten years in the Texas Department of Criminal Justice and a $5,000 fine. *See* Tex. Penal Code § 22.011(a)(2)(A). The trial court imposed sentence in accordance with the jury's verdict and ordered the sentences to be served consecutively. *See id.* § 3.03(b)(2)(A); Tex. Code Crim. Proc. art. 42.08. In five points of error on appeal, appellant complains about the admission of "backdoor" hearsay evidence, the exclusion of impeachment evidence, the trial court's failure to conduct a hearing outside the presence of the jury to determine the admissibility of extraneous-offense evidence, the denial of his right to present a meaningful defense, and the insufficiency of the evidence to support his convictions. We find no reversible error. However, through our own review of the record, we have found non-reversible error

in the written judgments of conviction. We will modify the judgments to correct the clerical errors and, as modified, affirm the judgments.

## BACKGROUND

V.R. testified that she knew appellant through church, where he was a worship leader. When she was 15 years old, she exchanged phone numbers with appellant at a church member's funeral. Subsequently, they began texting and talking with each other frequently. In one of their conversations, appellant asked V.R. if she would have sex with him. She refused because he went to her church and was 25 years old. Appellant assured her that no one would know. One week after the funeral, appellant asked V.R. to meet him at an H.E.B. grocery store near her house. V.R. snuck out of her house while her parents were asleep and met him as he had asked. Appellant picked V.R. up in his black pickup truck and told her that they were going to his friend's house to watch a movie. Instead, however, he drove her to a vacant lot.

Appellant parked the truck at the lot and told V.R. to get in the back seat, take off her clothes, and lie down. As she complied, appellant put sun shades up to cover all the windows, then moved to the back seat and removed his clothes. He took a towel from under the seat and placed it on the seat underneath V.R. He then put his fingers inside her vagina. Appellant next directed V.R. to get on her hands and knees. After she complied, he put his penis inside her vagina. At this point, V.R. told appellant to stop but he did not. According to V.R.'s testimony, he only stopped when he noticed blood coming from her vagina. He gave her paper towels to wipe herself and then told her to get dressed. Appellant put his clothes back on and got back in the front seat. He told V.R. to stay on the floor of the backseat while he drove her home. He dropped her off at a church near her house.

2

However, V.R. was afraid to go home. Instead, she walked around town. At some point, she encountered a boy she knew as "Jeremiah," who was a friend of one of her brothers. She borrowed his phone to call her mother but hung up before her mother answered because she got scared. V.R. testified that Jeremiah asked her to have sex with him but she said no. The two then smoked marijuana together. At some point, V.R. saw a knife sticking out from Jeremiah's pocket, became scared, and ran off without returning Jeremiah's phone. Afterwards, as she was walking, she saw one of her brothers outside a nearby store. Her brother picked her up and drove her home. Once at home, V.R. eventually told her dad that "[appellant] raped [her]."

F.F. met appellant at church when she was 12 years old. When she was 14, she and appellant began talking on the phone. Appellant began asking F.F. to sneak out of her home at night, which she did. He would pick her up in his truck. F.F. testified that her relationship with appellant became "physical"—meaning sexual—when she was 15 years old. She described multiple occasions on which she and appellant engaged in sexual activities; she stated that their sexual relationship lasted nine or ten months. F.F. also testified about two incidents in which she was with appellant parked in his truck and they were discovered by police: one at a park where they were "just talking" (before their relationship had become sexual) and another at a parking garage at Texas State University where they were both undressed and about to have sex. F.F. described having sex with appellant at a Motel 6 in San Marcos, in his truck at multiple locations, and in a storage building at church. Her testimony reflected that on numerous occasions appellant had anal sex, vaginal sex, and oral sex with her. He also penetrated her digitally on repeated occasions, including one time when

3

he attempted to put his entire fist into her vagina, causing her to bleed. F.F. disclosed appellant's conduct with her after V.R. revealed appellant's sexual assault of her.

The State charged appellant with two counts of sexual assault of a child, one count relating to each girl. A jury found appellant guilt of sexually assaulting both girls and for each count assessed a ten-year sentence and a $5,000 fine. The trial court sentenced appellant in accordance with the jury's verdicts, ordering the sentences to run consecutively. This appeal followed.

## DISCUSSION

### Backdoor Hearsay

At trial, Melissa Rodriguez, a forensic interviewer with the children's advocacy center, testified about the demeanor of V.R. and F.F. during their forensic interviews as well as the fact that both girls were enrolled in counseling at the advocacy center. Also at trial, V.R.'s father testified about what he did after his daughter told him about what had happened. In his first point of error, appellant complains that the trial court erred by allowing this testimony because it constituted inadmissible "backdoor" hearsay.

Hearsay is a statement, other than one made by the declarant while testifying at a trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is generally inadmissible except as provided by the rules of evidence or statute. Tex. R. Evid. 802. The hearsay prohibition cannot be circumvented by eliciting the substance of the statement in indirect form. *Schaffer v. State*, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989). If the content of a statement is presented by implication, such "backdoor hearsay" is subject to the same rules and limitations as the more common form of hearsay. *Gilbert v. State*, 874 S.W.2d 290, 295 (Tex.

4

App.—Houston [1st Dist.] 1994, pet. ref'd) (citing *Schaffer*, 777 S.W.2d at 113). Whether testimony violates the hearsay prohibition necessarily turns on how strongly the content of an out-of-court statement can be inferred from the context; the question is whether the strength of the inference produces an "inescapable conclusion" that the evidence is being offered to prove the substance of an out-of-court statement. *Head v. State*, 4 S.W.3d 258, 261–62 (Tex. Crim. App. 1999). "An analysis of whether the impermissible inference is so overriding as to fall within the hearsay prohibition will necessarily turn on the specific factual circumstances of a given case." *Id.* at 262 n.4.

Appellant argues that the complained-of testimony contained strong inferences about the truthfulness of the outcry statements of the girls and thus was "backdoor" hearsay. However, hearsay by inference, or backdoor hearsay, violates the prohibition against hearsay because it presents the content or substance, indirectly, of the out-of-court statement. Here, the complained-of testimony did not convey the content of the girls' out-of-court statements, even by implication. Rodriguez did not give any specifics about the girls' comments during the forensic interviews; she simply described her observations of the girls during their interviews.[1] These personal observations

---

[1] We note that the prosecutor asked Rodriguez, "Can you describe [F.F.]'s demeanor during this interview?" She responded, "Yes," and then proceeded to describe F.F.'s demeanor. Only after she completed her answer did appellant object. Because appellant waited until the question calling for the purportedly objectionable response had been asked and answered before he objected, his objection was untimely and his complaint about the admission of Rodriguez's testimony about F.F.'s demeanor has not been preserved for appellate review. *See* Tex. R. App. P. 33.1(a)(1); *see also Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (objection is timely if made at earliest opportunity or as soon as grounds for objection become apparent); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("[T]he failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence.").

conveyed her perception of how the girls felt emotionally during the interview; they did not convey the contents of any statements made during the interview. The fact that V.R. "seemed nervous" or that F.F. "was pretty upset" in no way conveyed their descriptions of the acts of sexual abuse appellant perpetrated against them. Nor does the fact that the girls were in counseling convey the content of any out-of-court statement describing sexual abuse.

Similarly, V.R.'s father did not convey any specifics about what his daughter told him.[2] Rather, his testimony merely described the actions he took after talking to her. The prohibition against backdoor hearsay does not prohibit a witness from testifying about actions he took in response to an out-of-court statement, but only from detailing the contents of the statement when doing so. *See, e.g.*, *Schaffer*, 777 S.W.2d at 114–15 (holding it was permissible for police officer to testify that officer was acting in response to "information received," but officer was not permitted to relate historical aspects of case, which were replete with hearsay statements); *see also Dunbar v. State*, No. 03-12-00315-CR, 2014 WL 2741237, at *5 (Tex. App.—Austin June 13, 2014, no. pet. h.) (mem. op., not designated for publication) ("Witnesses are generally allowed to explain that an out-of-court statement caused the witness to take a particular action so long as the testimony does not strongly imply the content of the out-of-court statement.").

The test for backdoor hearsay is whether the "'State's *sole intent* in pursuing [a] line of questioning was to convey to the jury' the contents of out-of-court statements." *Head*, 4 S.W.3d

---

[2] V.R.'s father answered affirmatively when the prosecutor asked, "Okay. Did, at some point, [V.R.] open up to you about what had happened?" Appellant neither objected to this question nor the answer. Appellant objected to the next question about whether V.R. "[made] an outcry to [him]," which the trial court sustained. The prosecutor then asked V.R.'s father, "What did you do next?"

6

at 262 (quoting *Schaffer*, 777 S.W.2d at 114). Because the content of the girls' out-of-court statements were not impliedly presented in the testimony of the forensic interviewer or V.R.'s father, we are unable to conclude from the record that the State's sole intent in offering the complained-of testimony was to convey the content or substance of any of the girls' out-of-court statements. *See id.* (concluding that trial court could have reasonably determined that State's intent in questioning witness was not solely to convey out-of-court statement). Accordingly, the trial court did not abuse its discretion in allowing the complained-of testimony. *See Gurka v. State*, 82 S.W.3d 416, 421 (Tex. App.—Austin 2002, pet. ref'd) (trial court's decision to admit testimony objected to on basis of backdoor hearsay is subject to abuse-of-discretion standard); *Head*, 4 S.W.3d at 262 n.4 (review of trial court's decision to allow disputed testimony is tempered by general rule that trial judge's evidentiary ruling on hearsay objection will be upheld absent abuse of discretion). We overrule appellant's first point of error.

### Impeachment Evidence

As evidence of the previous and subsequent relationship between appellant and F.F., *see* Tex. Code Crim. Proc. art. 38.37(b)(2), the State offered evidence of an incident when appellant and F.F. were discovered by police parked in appellant's truck in a university garage on the Texas State University campus. Upon discovery, appellant attempted to flee the scene in his truck but was apprehended and arrested for evading detention.

Jesus Balderama, a senior patrol officer with the Texas State University campus police, testified about the encounter with appellant. He stated that he discovered appellant's truck in one of the university's parking garages at approximately 1:30 a.m. with the engine running and

sun shades covering all the windows. The officer described his failed attempts to make contact with the occupants of the truck and the ensuing chase when appellant drove off. He testified that as he was pursuing appellant's truck, he noticed someone running from the truck and advised his dispatcher of the situation. He explained that he did not actually see the person jump out of the truck but did notice someone running from it.[3]

During cross-examination, appellant's counsel questioned Officer Balderama about the fleeing figure. He asked the officer to describe "the image that you say you saw exit the car and for how long you saw that image." The officer responded that he "saw that image for a brief 30 seconds, if that." Counsel later asked the officer how long the fleeing figure was on the dash-cam video from his patrol car. Officer Balderama responded, "Like I said, give or take a couple of seconds, 20, 30 seconds." Appellant's counsel persisted, asking, "A couple of seconds or 20, 30?" The officer repeated the time frame of "30, 20, 30 seconds." Counsel then announced his desire "to impeach this witness by letting him see his video." At the ensuing bench conference, appellant's counsel indicated that he wanted the officer to refresh his recollection with the video "or else [he was] going to impeach him with it, one or the other." Counsel asserted that "the figure, whoever it was, wasn't visible on his dash cam for more than three seconds, flat."[4] The trial court declined to allow appellant's counsel to impeach the officer in this manner.

---

[3] Subsequent testimony from F.F. revealed that she was the person who fled from appellant's truck that night. Her testimony also established that she and appellant were undressed and about to engage in sexual activity in the truck when discovered by the police.

[4] In his brief, appellant asserts that the figure appeared on the dash-cam video for "3-5 seconds of obscured view." Appellant failed to offer the video into evidence, so it is not part of the appellate record and is unavailable for review.

In his second point of error, appellant asserts that the trial court erred by not allowing his counsel to impeach Officer Balderama by showing the dash-cam video of appellant's evading-detention arrest. He contends that he was entitled to impeach the general credibility of the officer by use of such evidence. We disagree.

As a general rule, a party is not entitled to impeach a witness on a collateral or immaterial matter. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990); *Poole v. State*, 974 S.W.2d 892, 905 (Tex. App.—Austin 1998, pet. ref'd). A collateral matter is one which seeks only to test a witness's general credibility or relates to facts irrelevant to issues at trial. *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984); *Delamora v. State*, 128 S.W.3d 344, 363 (Tex. App.—Austin 2004, pet. ref'd). "The test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea." *Ramirez*, 802 S.W.2d at 675 (quoting *Bates v. State*, 587 S.W.2d 121, 133 (Tex. Crim. App. 1979)); *see Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). Here, the evidence sought to be introduced by appellant bears no relationship to any contested issue in the sexual-assault trial. How long the fleeing figure was shown on the dash-cam video was not evidence that appellant could have relied on in his case-in-chief to show that he had not sexually assaulted F.F. Thus, whether Officer Balderama was accurate as to the precise amount of time that the fleeing figure appeared on the dash-cam video was a collateral matter.

Furthermore, a party may not cross-examine a witness on a collateral matter and then contradict the witness's answer. *Delamora*, 128 S.W.3d at 363; *see Shipman v. State*, 604 S.W.2d 182, 184–85 (Tex. Crim. App. 1980). By repeatedly asking Officer Balderama how

9

long the fleeing figure appeared on the dash-cam video, appellant's counsel elicited a response from the officer for the sole purpose of introducing extraneous evidence to contradict the officer's response and place the officer's own character into issue. Such questioning was improper. *See Hammett v. State*, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986) (party may not "bootstrap" its way to impeachment by eliciting offending statement on cross-examination).

As a collateral matter—not relating to appellant's claim that he was not guilty of sexually assaulting F.F. but merely serving to contradict Officer Balderama on facts irrelevant to issues at trial—the amount of time the fleeing figure appeared on video was inadmissible impeachment evidence. As such, the trial court did not err by refusing to allow appellant to impeach Officer Balderama with the dash-cam video. We overrule appellant's second point of error.

### Extraneous-Offense Evidence

During the State's rebuttal case, Todd Harrison, a patrol officer with the San Marcos Police Department, testified about an incident in which he encountered appellant and 14-year-old F.F. parked in appellant's truck in one of the city parks after hours, at around 2:30 in the morning. In his third point of error, appellant asserts that the trial court erred in allowing this testimony without first conducting a hearing outside the presence of the jury to determine its admissibility.

Preservation of error is a systemic requirement on appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012) (citing *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request,

10

objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). An objection is timely if made at the earliest opportunity or as soon as the grounds for the objection become apparent. *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 306 (Tex. App.—Austin 2013, no pet.). If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited. *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *Sandoval*, 409 S.W.3d at 306.

Here, appellant objected to the extraneous-conduct evidence and requested a hearing outside the presence of the jury only after the officer had already testified about the encounter rather than when the prosecutor began eliciting the details of the encounter. Thus, appellant's objection and request for a hearing were untimely. Appellant's late objection and untimely request did not preserve his complaint as to the admission of the officer's testimony. *See Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("[T]he failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence."). Accordingly, we overrule appellant's third point of error.

**Right to Present Defense**

In his fourth point of error, appellant asserts that the trial court's evidentiary rulings violated his right to present a complete and meaningful defense. As best as we can discern, appellant complains about the exclusion of the following:

11

- evidence of a potential alternative perpetrator for V.R.'s sexual assault,

- evidence of a potential alternative perpetrator for F.F.'s sexual assault,

- F.F.'s medical records from her stay in a psychiatric hospital,

- testimony demonstrating the detective's "shoddy investigation,"

- evidence of V.R.'s juvenile record,

- a DPS lab report,

- testimony about V.R.'s dating history,

- evidence of F.F.'s pregnancy at the time of the SANE exam,

- opinion testimony regarding F.F.'s truthfulness and unreliability as a witness,

- testimony about a purported prior false allegation of sexual assault made by F.F.,

- the detective's arrest warrant affidavit concerning the sexual assault of V.R., and

- rebuttal testimony from the SANE nurse who examined V.R.

As noted in the discussion of the previous point of error, preservation of error is a systemic requirement on appeal. *Blackshear*, 385 S.W.3d at 590. An appellate issue involving a proffer of evidence, as opposed to an objection, must still satisfy the preservation-of-error requirements. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (stating that purpose of requiring objection is to give trial court or opposing party opportunity to correct error or remove basis for objection and reasoning that "[a]though this case involves a proffer of evidence rather than an objection, the same rationale applies"). To preserve a complaint regarding the exclusion of evidence, a party must not only tell the judge that the evidence is admissible, but must also explain

12

why it is admissible. *Id.* at 177–79. Further, the explanation given at trial must match the one urged on appeal. *Id.* at 179.

As to the excluded evidence about which appellant complains in this point of error, appellant objected only that he was "denied the opportunity to properly defend" in connection with the exclusion of F.F.'s medical records from the psychiatric hospital. With all the other rulings related to the complained-of exclusion of evidence, appellant neither objected to the exclusion on the ground, nor offered the evidence on the basis, that his right to present a meaningful defense was compromised. While the right to present a meaningful defense is rooted in constitutional protections, even constitutional rights may be waived if the proper request, objection, or motion is not asserted in the trial court. *Saldano*, 70 S.W.3d at 886–87; *see Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). If a party fails to properly object to constitutional errors at trial, these errors can be forfeited. *Clark*, 365 S.W.3d at 339; *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). Because appellant did not articulate that his right to present a meaningful defense supported the admission of the complained-of excluded evidence (other than F.F.'s medical records from the psychiatric hospital), the trial court never had the opportunity to rule on this rationale. Accordingly, appellant did not preserve his complaint that the trial court's evidentiary rulings excluding the complained-of evidence (other than F.F.'s medical records from the psychiatric hospital) violated his right to present a proper defense.

As to the medical records from F.F.'s hospitalization in a psychiatric hospital, appellant sought to offer these records to attack F.F.'s reliability and credibility. However, during cross-examination of F.F., appellant elicited testimony about F.F.'s mental-health issues, including

13

the fact that she engaged in self-harming behavior (cutting herself), heard voices (demon voices telling her to kill herself), had visual hallucinations (red and green eyes on the bathroom window that watched her take showers), thought her father had been possessed by demons on three occasions (and saw him levitate on one such occasion), and had suicidal ideation (including specific plans for killing herself). F.F. also admitted that when she was in the psychiatric hospital she denied being sexually abused, even though her hospital stay was after appellant began engaging in sexual activity with her. Later, on further cross-examination, F.F. acknowledged that she was not taking the medications prescribed to her to address her visual and auditory hallucinations.

In addition, appellant called a psychologist to testify as an expert on his behalf. Based on his review of F.F.'s hospital records, the doctor testified that F.F. was "suffering from psychotic symptoms" and "her GAF was quite low."[5] The two GAF scores F.F. was given, 20 and 15, reflected "extremely compromised" functioning. The doctor explained that a GAF score between 21 and 30, "which was a notch above what [F.F.] got," would reflect people who are actively delusional, having hallucinations, who would have serious impairment in their judgment or in their communication, and would be unable to function in most situations. Appellant's counsel also questioned his expert about the "risk that is associated when a psychotic stops taking his or her medication."

Thus, the record reflects that the evidence for which appellant sought admission of F.F.'s medical records was in fact presented to the jury by the defense. Appellant was able to attack F.F.'s credibility with evidence of her mental-health issues. Appellant's assertion that the exclusion

_____

[5] The expert explained: "The GAF is an overall rating scale that mental health providers use, in order to try and make a very general assessment of the level of functioning of the individual. It runs from 0 to 100, with 100 being best, in ten-point increments."

14

of the medical records from the psychiatric hospital deprived him of "the opportunity to defend" is

without merit. We overrule appellant's fourth point of error.[6]

## Sufficiency of the Evidence

In his final point of error, appellant challenges the sufficiency of the evidence to

support his convictions for sexual assault of a child.

---

[6] Additionally, we observe that appellant's brief misstates some of the complained-of rulings of the trial court and the purported exclusion of evidence. For example, appellant states in his brief that his counsel was not permitted to attack F.F.'s reputation for truthfulness through defense witness Laura Cerda. However, the record reflects that counsel explicitly asked Ms. Cerda, "What was [F.F.]'s reputation in the community for truthfulness?" She answered the question, uninterrupted and without objection from the State. It was only to the subsequent questioning concerning a "false rape claim" that the State objected. In the ensuing proffer outside the presence of the jury, appellant wholly failed to make any showing of the falsity of the prior allegations. *See Lopez v. State*, 18 S.W.3d 220, 225–26 (Tex. Crim. App. 2000) (for prior accusations to have probative value in impeaching witness's credibility in sexual-assault case, party must show accusations were false and similar to current accusation). Accordingly, as to that line of questioning, the trial court ruled, "This testimony is not coming in, and the jury will be instructed to disregard it in its entirety." Appellant's characterization of that trial-court ruling as excluding testimony from his witness about F.F.'s reputation for truthfulness is inaccurate.

Also in his brief, appellant claims that his counsel was prevented from questioning Detective Nichols about the impropriety of two complaining witnesses meeting to collaborate. Yet, the record demonstrates otherwise. During cross-examination of the detective, appellant's counsel asked the detective, "Is it good police practice in your jurisdiction to allow two witnesses to get together and compare their stories before they would come to you and give a second statement?" After the court overruled the State's relevance objection, the detective answered, "Not if they are known witnesses, no." Counsel later asked, "Is it good practice, then, to allow a complaining witness and a — somebody who had been implicated as a potential complaining witness — to allow them to get together during the course of your investigation before you take an official statement from the second one?" Detective Nichols answered, "If they are in my control, no, it's not good practice."

Because we resolve this point of error on the basis of procedural default (as to the purportedly excluded evidence other than F.F.'s medical records) and do not address the substance of appellant's complaint (except as to the exclusion of F.F.'s medical records), we need not address these and other incorrect descriptions of the record.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Rabb v. State*, --- S.W.3d ---, No. PD-1643-12, 2014 WL 2865698, at *2 (Tex. Crim. App. June 25, 2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Rabb*, 2014 WL 2865698, at *2; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the jury reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally.") (quoting *Laster*, 275 S.W.3d at 518).

In his brief, appellant argues that the evidence is insufficient to support his conviction for sexually assaulting V.R. because there was "no physical evidence to corroborate [V.R.'s] story," there is no corroborating DNA evidence, appellant's mother and sister provided a "solid alibi," the investigating detective was "not credible," and there were inconsistencies in witness testimony. He argues that the evidence is insufficient to support his conviction for sexually assaulting F.F. because F.F.'s accusation was "not supported by independent evidence," F.F. came forward only after talking to V.R. and discovering that the two girls had similar stories, there was "no DNA corroboration," appellant's mother and sister explained how F.F. had knowledge of the contents of appellant's truck

16

(one of the alleged sites of sexual-assault incidents), F.F.'s story regarding one sexual assault incident was "neither plausible nor credible" and was "strongly disputed" by testimony of defense witnesses, F.F. was not a reliable witness because she was afflicted with psychological issues, and there were omissions and inconsistencies in F.F.'s testimony.

However, the jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. arts. 36.13, 38.04. The jury is also free to accept or reject any or all of the evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Thus, when the record supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

V.R. testified that on the night in question she was 15 years old and, at appellant's direction, snuck out of her house while her parents were asleep. Appellant picked her up behind an H.E.B. grocery store near her house. He drove her to a vacant lot, where he parked his truck and put multiple sun screens up to cover all the truck windows. He told V.R. to get in the back seat. When she complied he told her, in a "kind of mean" voice, to remove her clothes. Again, she complied thinking that "something bad was going to happen to [her]." Appellant then moved to the back seat and took his clothes off. He told V.R. to lay down and took a towel from under the seat, placing it on the back seat under V.R.'s bottom. V.R. testified that appellant then "put his hand in [her] vagina." She stated that "[i]t hurt" when he put his fingers in the "inside part of [her] vagina."

17

Appellant then instructed V.R. to get on her hands and knees. Once again, V.R. complied. According to V.R., appellant then "stuck his penis in [her]," "in [her] vagina." She described feeling his chest against her body as he "kept going back and forth" and indicated that "[i]t hurted really bad." At that point, V.R. told appellant to stop, but he did not. She testified that appellant later "stopped on his own because he was seeing blood" coming from her vagina. Appellant then gave V.R. paper towels to wipe herself with. As he did so, he told V.R. to go home and take a shower. When V.R. cleaned herself with the paper towels she saw her blood on them. V.R. testified that afterwards "that part of [her] body . . . hurted" and she felt "confused." Appellant told her to put her clothes back on, and he put his own clothes back on. He then got back in the front seat, told V.R. to stay in the backseat on the floor, started the truck, and began driving. He dropped her off by a church near her house.

F.F. testified that appellant had engaged in sexual activity with her over a period of nine to ten months when she was 15 years old. She said that she had sex with appellant more than 100 times, describing the kinds of sex as "[o]ral, anal and the normal [meaning vaginal]." She described an incident when appellant took her to a Motel 6 in San Marcos and "put his fingers inside [her] . . . inside [her] vagina." She said that she told appellant to stop because he was hurting her and she was bleeding because "he was trying to put his whole fist inside [her]." F.F. said that they had sexual encounters in appellant's truck "a lot of times" and described an incident when appellant parked his truck in a Target parking lot in San Marcos, after hours, and put sun shades up to cover all the windows and "did [her] through the back," meaning he penetrated her anus with his penis. She testified that "it hurt" and said that she bled, as she did several times when they had anal

18

intercourse. She also described the lubricant appellant often used when they had anal intercourse. As to the indicted offense, F.F. testified about an incident in a church storage building during a church service. She said that she had gone to the storage to retrieve water for her mother. Appellant came into the storage building and told her to pull her pants down. Initially F.F. refused but appellant locked the door and told her "just to do it." She testified that she "did it real quick" and appellant "put his penis in [her] vagina." She recalled that he was not wearing a condom and "he comed inside" a cup.

Thus, both V.R. and F.F. described instances in which appellant penetrated their sexual organs with his sexual organ as alleged in the indictment. *See* Tex. Penal Code § 22.011(a)(2)(A). Both girls provided specific facts and sensory details when testifying about what happened, where it happened, and (in general terms) when it happened. Appellant's contention that the testimony of V.R. or F.F. is insufficient because it was uncorroborated is without merit. Because both girls were under 17 years of age at the time of these offenses, their testimony alone is sufficient to support appellant's conviction for these sexual assaults. *See* Tex. Code Crim. Proc. art. 38.07(a), (b)(1); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008). Further, the State has no burden to produce any corroborating or physical evidence. *See Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

19

Moreover, contrary to appellant's claim, there was corroborating evidence in this case. The sexual-assault examinations of both girls provided corroborating medical evidence. The sexual-assault nurse who examined V.R. approximately 19 hours after the assault noted trauma present in the genital exam of V.R. The nurse described acute injuries present in V.R.'s sexual organ—including bruising, tears, and swelling of the hymen—consistent with V.R.'s description of the sexual assault. The nurse also observed V.R. and noted that she had difficulty sitting because she was in pain. The clothing V.R. wore that night, recovered during the sexual-assault exam, had blood stains in the crotch area. Likewise, the sexual-assault nurse who examined F.F. noted trauma present in F.F.'s genital exam. The nurse observed several well-healed tears in F.F.'s hymen consistent with previous sexual activity. She opined that such injuries usually result from blunt force trauma. Also, phone records demonstrated that appellant communicated with the girls, texting and calling, during the time frame of the sexual assaults, just as the girls indicated. In addition, the girls' therapist described the common characteristics of victims of child sexual abuse and testified that both girls exhibited some of those behaviors. Also, the testimony of law-enforcement officers showed that appellant was discovered parked in his truck with F.F. on several occasions.[7]

In short, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of these offenses beyond

---

[7] In addition, the testimony of V.R. and F.F. demonstrated that appellant engaged in similar conduct with both girls: sexual activity in his parked truck after covering the windows with sun screens and penetrating their sexual organs until they bled. Each girl's testimony helped corroborate that of the other.

a reasonable doubt. Accordingly, we overrule appellant's challenge to the sufficiency of the evidence in his final point of error.

### Clerical Error in Judgments

However, we observe that the judgments of conviction in this case contain clerical errors. Both judgments of conviction reflect that the "Statute for Offense" is "TPC 22.021(a)(2)(A)." However, section 22.021 of the Penal Code is the statute for aggravated sexual assault. The statute for sexual assault as alleged in the indictment in this case is section 22.011(a)(2)(A) of the Penal Code. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify each judgment of conviction to state that the "Statute for Offense" is "22.011(a)(2)(A) Penal Code."

### CONCLUSION

Having overruled all of appellant's points of error, we modify the trial court's judgments of conviction as noted above and affirm the judgments as modified.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Modified and, as Modified, Affirmed

Filed: August 22, 2014

Do Not Publish

21